INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Plaintiff-Appellant,

v.

ALOHA AIRLINES, INC., Defendant-Appellee.

No. 83–2558.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 1, 1985.

Decided Nov. 13, 1985.

Herbert R. Takahashi, Honolulu, Hawaii, for plaintiff-appellant.

Robert S. Katz, Richard M. Rand, Honolulu, Hawaii, for defendant-appellee.

Before FARRIS, PREGERSON, and BEEZER, Circuit Judges.

PREGERSON, Circuit Judge:

The International Association of Machinists and Aerospace Workers (IAM) appeals the district court's partial summary judgment order denying its motion to compel arbitration. We find that we have jurisdiction over this appeal and affirm.

## FACTS

On December 6, 1979, Aloha Airlines, Inc. (Aloha), a common carrier under section 201 of the Railway Labor Act (the Act), 45 U.S.C. § 181 (1982), entered into a collective bargaining agreement ("Basic Agreement") with the IAM, the union representative of Aloha's "clerical unit" employees.[1] The Basic Agreement contained a grievance and arbitration procedure for the resolution of disputes growing out of the interpretation or application of any of its terms. Article XXII of the Basic Agreement provided that the agreement would "remain in full force and effect to and including February 28" and would renew itself each succeeding March 1, unless a notice of intended change was served by one of the parties.

On April 2, 1982, because of financial difficulties in the airline industry, the IAM agreed to certain wage and benefit reductions for a period of eleven months. These concessions were set out in an Interim

---

1. The "clerical unit" employees consisted of Aloha's clerical, office, fleet, and passenger service employees.

Agreement, which was incorporated into the Basic Agreement. The Interim Agreement provided that the wage and benefit reduction would be effective only through February 28, 1982, and that on March 1, 1983, the Basic Agreement would renew itself without change unless either party filed the appropriate notice.

On December 30, 1982, the IAM filed a notice under section 6 of the Act, 45 U.S.C. § 156 (1982), seeking to renegotiate the terms of its agreements with Aloha. In January 1983, Aloha and the IAM began negotiating the terms of a new agreement, and the dispute moved into mediation pursuant to section 5 of the Act, 45 U.S.C. § 155 (1982). On March 1, 1983, when Aloha continued to observe the wages, hours and vacation benefits specified in the Interim Agreement, the IAM filed a grievance on behalf of its employees. After exhausting the preliminary steps of the grievance procedure, the IAM sought to have the matter arbitrated. Aloha refused to participate, having consistently maintained that the dispute was not "grievable."

When Aloha refused arbitration, the IAM brought a motion to compel arbitration in Hawaii state court. Aloha removed the action to federal court as a matter arising under federal law, the Railway Labor Act, 45 U.S.C. §§ 151–188 (1982), and counterclaimed for declaratory and injunctive relief. Aloha's motion for partial summary judgment on the issue of arbitration was granted on October 25, 1983. The district court concluded that the parties were engaged in a "major dispute" that was not subject to binding arbitration under the terms of the Act. The IAM timely appealed.

## DISCUSSION

### I. *Jurisdiction*

Initially, we are confronted with the issue of our jurisdiction over the district court's grant of partial summary judgment. Because a partial summary judgment order is not a final decision, it is not appealable under 28 U.S.C. § 1291 (1982), unless it is

certified by the district court for direct appeal under Fed.Civ.P. 54(b), a condition not satisfied here. The order may be appealable, however, if it qualifies under 28 U.S.C. § 1292(a)(1), which gives this court jurisdiction over interlocutory orders "granting ... [or] refusing ... injunctions."

The Supreme Court has held that certain orders granting or denying a stay of litigation pending the outcome of proceedings in another forum are analogous to injunctions and appealable under § 1292(a)(1). *Enelow v. New York Life Insurance Co.*, 293 U.S. 379, 381–83, 55 S.Ct. 310, 310–11, 79 L.Ed. 440 (1935); *Ettelson v. Metropolitan Life Insurance Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *see also Baltimore Contractors, Inc. v. Bodinger*, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). The *Enelow-Ettelson* rule does not apply here, however, because the order is not one staying or refusing to stay a proceeding in the district court. *Alascom, Inc. v. ITT North Electric Co.*, 727 F.2d 1419, 1421 (9th Cir. 1984); *accord Ohio-Sealy Mattress Manufacturing Co. v. Duncan*, 714 F.2d 740, 743 (7th Cir.1983), *cert. denied*, 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 176 (1984).

Alternatively, the motion to compel arbitration may be appealable if it meets the requirements set out in *Carson v. American Brands, Inc.*, 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). Under *Carson* the litigant must show that the interlocutory order had the effect of refusing an injunction, that it might have "serious, perhaps irreparable consequence[s]," and that it can be "effectually challenged" only by immediate appeal. *Id.* at 84, 101 S.Ct. at 996. Those requirements are satisfied here. In *Alascom*, we held that the grant of a motion to stay arbitration is appealable under section 1292(a)(1). 727 F.2d at 1422. *Accord Buffler v. Electronic Computer Programming Institute, Inc.*, 466 F.2d 694, 696–98 (6th Cir.1972); *see also Weissbuch v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 558 F.2d 831, 833 (7th Cir.1977). We con-

clude that there is no significant difference between the grant of the motion to stay arbitration involved in *Alascom* and the denial of the motion to compel arbitration present here. Both orders were in the nature of an injunction because the court declined to exercise its equitable powers to order a proceeding in another forum.

In addition, the decision has serious consequences that can only be challenged by immediate appeal. In *Alascom*, we concluded that denying the parties arbitration deprives them of an inexpensive and expeditious means of resolving the dispute. 727 F.2d at 1422. If a litigant "must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever." *Id.; see also Sentry Life Insurance Co. v. Borad,* 759 F.2d 695, 698 (9th Cir.1985) (recognizing harm in "refusing to send a case to arbitration in the first place"); *but see Ohio-Sealy,* 714 F.2d at 743 (refusal to compel arbitration not likely to have "serious, perhaps irreparable consequences.").

Because the district court's decision deprives the IAM of the opportunity to arbitrate the dispute, a decision with serious consequences that can only be challenged by immediate appeal, we find the district court's grant of partial summary judgment appealable.

## II. Characterization of Dispute Under Railway Labor Act

### A. Standard of Review

We review *de novo* a district court's grant of summary judgment. *Grigsby v. CMI Corp.,* 765 F.2d 1369, 1373 (9th Cir. 1985). We apply the same standard as that employed by the trial court under Fed.R. Civ.P. 56(c) and will affirm only if the record, read in the light most favorable to the non-moving party, reveals no genuine issue of material fact and establishes that the moving party is entitled to judgment as a matter of law. *Id.*

### B. Merits

The parties do not dispute the material facts. The only question before us is a narrow question of law, namely, whether the dispute between the parties is a "major dispute" within the jurisdiction of the district court, or a "minor dispute" within the exclusive jurisdiction of the System Board of Adjustment. We do not decide the terms and conditions of employment that should apply during the status quo period. This determination remains a matter initially for the district court.

■ All disputes that arise between carriers and employee unions under the Railway Labor Act are either major or minor.[2] *Elgin, Joliet & Eastern Railway v. Burley,* 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945), *aff'd on rehearing,* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). Minor disputes concern the interpretation or application of collective bargaining agreements and are resolved through binding arbitration before the System Board of Adjustment. *Id.* at 723, 65 S.Ct. at 1289; *International Association of Machinists & Aerospace Workers v. Republic Airlines,* 761 F.2d 1386, 1389 (9th Cir.1985). Federal courts have no jurisdiction to resolve minor disputes. *Id.* at 1390; *O'Donnell v. Wien Air Alaska, Inc.,* 551 F.2d 1141, 1147 (9th Cir.1977). Major disputes, on the other hand, concern the formation of collective bargaining agreements or efforts to secure new rights and incorporate them into future agreements. *Elgin,* 325 U.S. at 723, 65 S.Ct. at 1289.

■ A party initiates a major dispute by filing a section 6 notice, proposing changes in the parties' collective bargaining agreement. *Detroit & Toledo Shore Line Railroad v. United Transportation Union,* 396 U.S. 142, 145, 90 S.Ct. 294, 296, 24 L.Ed.2d 325 (1969); *Trans International Airlines Inc. v. International Brotherhood of Teamsters,* 650 F.2d 949, 953 (9th

---

**2.** Although the terms "major" and "minor" nowhere appear in the Act, they have come into common usage since the Supreme Court first coined the terms in *Elgin, Joliet & Eastern Railway,* 325 U.S. at 723, 65 S.Ct. at 1289 (1945).

Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); 45 U.S.C. § 156. Once a section 6 notice is filed and after the collective bargaining agreement terminates, neither party may alter the conditions of employment in effect, but must maintain the "status quo" during the course of settlement. The purpose of the status quo provision is to impose an obligation on the parties to make every reasonable effort to negotiate a settlement and to refrain from altering the status quo until the period ends. *Detroit & Toledo Shore Line Railroad,* 396 U.S. at 149, 90 S.Ct. at 298. Binding arbitration is not available to parties involved in a major dispute. *Elgin,* 325 U.S. at 725, 65 S.Ct. at 1290.

■ The IAM and Aloha disagree over whether their dispute as to the status quo wage rate is a major or a minor dispute. The IAM acknowledges that the effect of its section 6 notice was to bring the status quo provisions of the Act into effect. It argues, however, that the determination of what constitutes the status quo can be arrived at only by examining the parties' collective bargaining agreements. Thus, the IAM concludes that the dispute is a minor one which should go to arbitration. Aloha counters that determination of the status quo requires an interpretation of section 6 of the Act, and thus the dispute is major. We agree with Aloha.

Although the IAM's argument has intuitive appeal, it confuses the effect of the Act. Both the Basic Agreement and the Interim Agreement expired by their own terms on March 1, 1983, because the IAM had filed a section 6 notice and was seeking to negotiate new and different terms for a new collective bargaining agreement. As of March 1, 1983, there was simply no existing collective bargaining agreement to interpret. "There is nothing in the Railway Labor Act which extends a contract

beyond its termination date." *International Association of Machinists & Aerospace Workers v. Reeve Aleutian Airways, Inc.,* 469 F.2d 990, 992 (9th Cir.1972), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2273, 36 L.Ed.2d 958 (1973). The parties must continue to observe the wages, hours and working conditions set out in the agreements solely because of the provisions of the Act; the Act creates a statutory status quo. The twin occurrences of the expiration of the agreements and the filing of the section 6 notice automatically triggered the status quo provisions. Thus, the inquiry is not one which looks to the parties' collective bargaining agreements; instead, the Act requires an objective determination of the actual status quo.

Since the dispute between Aloha and the IAM was neither contemplated nor arguably covered by either the Basic or the Interim Agreements, it cannot be a minor dispute. *Switchmen's Union of North America v. Southern Pacific Co.,* 398 F.2d 443, 447 (9th Cir.1968); *O'Donnell,* 551 F.2d at 1147 ("The rule of *Switchmen's* has been consistently followed in our Circuit and has been adopted in other Circuits as well."). Rather, the underlying dispute concerns the terms of the collective bargaining agreement to succeed those which expired on March 1, 1983 with the filing of the IAM's section 6 notice, and must be characterized as a major dispute.[3]

Given the existence of a major dispute, the district court correctly found that arbitration was not available. The district court must now decide the "actual, objective working conditions out of which the dispute arose," *Detroit & Toledo Shore Line Railroad,* 396 U.S. at 153, 90 S.Ct. at 301, to determine the details of the statutory status quo. This will require the district court to review the Agreements' terms and the intent of the parties when

---

**3.** The IAM's argument that the dispute is minor because it arises from the interpretation of the specific termination date provision in the Interim Agreement is thus incorrect. The absence of a termination date in the Interim Agreement, or the inclusion of a renewal provision in the Basic Agreement, has no effect on both Agreements'

potential ability to provide the terms of the status quo. *See Manning v. American Airlines, Inc.,* 329 F.2d 32, 34 (2d Cir.), *cert. denied,* 379 U.S. 817, 85 S.Ct. 33, 13 L.Ed.2d 29 (1964). As we noted earlier, the determination of the precise terms of the status quo remains initially a matter for the district court.

they agreed to those terms. *O'Donnell,* 559 F.2d at 1144; *Airline Pilots Association, International v. Pan American World Airways, Inc.,* 765 F.2d 377, 380–82 (2d Cir.1985).

AFFIRMED.