**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, and its affiliated District Lodge No. 143, and its affiliated Local Lodge No. 2202, Plaintiffs,**

v.

**ALASKA AIRLINES, INC., Defendant.**

**No. C85–1671M.**

United States District Court, W.D. Washington.

Feb. 5, 1986.

Hugh Hafer, David Campbell, Hafer, Price, Rinehart & Schwerin, Seattle, Wash., for plaintiffs.

Richard Twiss, Perkins, Coie, Seattle, Wash., for defendant.

### ORDER

McGOVERN, Chief Judge.

This action is before the court on the motion of Plaintiff International Association of Machinists and Aerospace Workers ("IAM") for a preliminary injunction bar-ring Defendant Alaska Airlines from further implementation of a "super-seniority" plan instituted as a result of a work stoppage by the union. The basic facts are not disputed.

### THE FACTS

Defendant Alaska Airlines, Inc. ("Alaska") is an air carrier headquartered in Bellevue, Washington. Plaintiffs IAM and its affiliates District Lodge 143 and Local Lodge 2202 ("Unions") are labor organizations representing two separate groups of Alaska employees. One unit is composed of mechanic and related positions ("Mechanics"). The other is composed of office, clerical, and professional positions ("COPS").

For many years, the mechanics and COPS units have been covered by separate collective bargaining agreements. The COPS' agreement has been in full force and effect for all periods pertinent to this action. The Mechanics' agreement, however, was opened for renegotiation procedures required under the Railway Labor Act, 45 U.S.C. § 151, *et seq.* The mechanics called a strike beginning on March 4, 1985. The strike was settled pursuant to a June 4, 1985 back-to-work agreement applicable *solely* to the mechanics unit.

During the course of the mechanics' strike, approximately 95 members of the COPS group honored the mechanics' picket lines. Alaska hired permanent replacements to fill their positions. At the conclusion of the strike, Alaska declined to negotiate a back-to-work agreement for the COPS sympathy strikers, and refused their offers to return to work. Instead, Alaska established a recall plan it contends is based on seniority. When a job opening occurs, Alaska awards the job on a promotional basis to replacements and COPS unit employees who crossed picket lines, rather than calling sympathy strikers back to work.

The Union filed a grievance alleging the recall plan violated the current COPS contract. Alaska declined to expedite the grievance procedure and, the union alleges,

refused to provide information pertinent to the grievance. This suit alleges Alaska's hiring of permanent replacements, refusal to provide information, and institution of the so-called "super seniority" plan violate the Railway Labor Act. Although all the above conduct is at issue in the lawsuit, the pending motion only seeks a preliminary injunction barring the super seniority plan.

Plaintiff Union basically asserts one argument in support of its motion for preliminary injunction: that Alaska's purported "super-seniority" plan is a *per se* violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* and is causing irreparable harm to the union's members. Alaska, for its part, asserts several defenses: that Plaintiff is barred by the Norris-LaGuardia Act, 29 U.S.C. § 101, *et. seq.* from seeking injunctive relief, that the Unions have demonstrated little chance of success on the merits of the case, that the RLA does not confer the right to strike in sympathy of another union, that the contract between the parties expressly prohibits strikes, that Plaintiff's exclusive contractual and administrative remedies bar this lawsuit, and Plaintiff's injuries, if any, can be satisfied through an award of damages.

Because of the Court's disposition in this matter, it is not necessary to discuss most of Plaintiff's claims and Alaska's defenses.

## I. The Major-Minor Dispute Provisions.

■ Under the RLA, all disputes arising between carriers and employee unions are either major or minor. *Elgin, Joliet & Eastern Railway v. Burley*, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–93, 89 L.Ed. 1886 (1945), *aff'd on rehearing*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). Minor disputes involve the meaning, interpretation or proper application of existing collective bargaining agreements and are resolved through binding arbitration before a System Board of Adjustment. *International Association of Machinists and Aerospace Workers v. Aloha Airlines*, 776 F.2d 812 (9th Cir.1985); *International Association of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1389 (9th Cir.1985). On the other hand, a major dispute concerns the formation of collective bargaining agreements or efforts to secure new rights and incorporate them into future agreements. *Elgin*, 325 U.S. 715, 723, 65 S.Ct. 1286, 1289–90; *Aloha Airlines, supra.* In *Aloha Airlines*, the Court noted that a major dispute is initiated by the filing of a notice proposing changes in the collective bargaining agreement. A major dispute is within the jurisdiction of this court.

In a minor dispute, however, if the parties are unable to resolve their differences through negotiations or prescribed grievance procedures, the arbitrator has exclusive jurisdiction to interpret the collective bargaining agreement and make an appropriate award. *IAM v. Republic Airlines*, 761 F.2d 1386 (9th Cir.1985). The arbitrator also must consider equitable defenses to arbitration and determine whether the party demanding arbitration has satisfied procedural requirements. *Republic Airlines*, 761 F.2d at 1390. Minor grievances ultimately are decided by adjustment boards.

■ In the instant action, Alaska argues that the RLA imposes an affirmative duty on a carrier and its employees to resolve the dispute in arbitration. If that fails, jurisdiction falls to the System Board of Adjustment, pursuant to the provisions of 45 U.S.C. § 184. Alaska contends this dispute grows out of grievances or from the interpretation or application of agreements and that the COPS sympathy strikers only have such rights as are conferred by the agreement. The union argues that this dispute is major because Alaska is discriminating against employees participating in a protected activity. Alternatively, the union contends Alaska is estopped from relying on the contractual dispute resolution procedure because it has refused to waive the preliminary stages of the grievance procedure and has declined to provide the union various documents. Applying the tests set forth by Ninth Circuit in *Aloha Airlines* and *Republic Airlines, supra,* it is clear this action *does not* involve the *formation*

of a collective bargaining agreement. The collective bargaining agreement between Alaska and COPS was in full force and effect at the time of the walkout and neither party claims any negotiations were underway to change the agreement. Accordingly, this action cannot be a major dispute as contemplated by the RLA. This dispute does involve the meaning, interpretation and/or proper application of the existing collective bargaining agreement between Alaska and the Union, and therefore is "minor" and within the exclusive jurisdiction of the System Board of Adjustment. Therefore, this Court lacks jurisdiction to address Plaintiff's complaints.

While Plaintiff does not offer any legal authority for its contention that Alaska has waived the contractural procedure by its alleged obstruction of arbitration, the argument has some merit. It is distressing that Alaska may obstruct the arbitration process because this Court lacks jurisdiction over this "minor dispute." However, to borrow from *International Brotherhood of Teamsters v. Pan American World Airlines*, 607 F.Supp. 609 (E.D.N.Y.1985), a benighted conception of labor relations does not rise to the level of discrimination or coercion that would justify judicial intervention. Therefore, the Court must dismiss Plaintiff's motion for a preliminary injunction because the dispute herein is "minor" as defined by the jurisprudence under the Railway Labor Act, 45 U.S.C. § 151, *et. seq.*

## II. The No Strike Clause.

The collective bargaining agreement between the Union and Alaska contains a no-strike clause:

> It is the intent of the parties of this Agreement that the procedures herein shall serve as a means of peaceful settlement for all disputes that may arise between them. During the life of this Agreement the Company will not lock out any employee; the Union will not cause or permit its members to cause, nor will any member of the Union take part in any sit-down, stay-in, or slow-down in any plant, hangar or facility of the Company, or in any curtailment or restriction of operation, overhaul, repair or servicing of airplane, or any work of the Company. *The Union will not cause or permit its members to cause, nor will any member of the Union take part in any strike or stoppage* of any of the Company's operations, or picket any of the Company plants or premises until the bargaining procedures outlined in this Agreement and provided for in the Railway Labor Act have been exhausted; and in no case where a grievance or dispute comes under the jurisdiction of the System Board of Adjustment as provided for herein. The Company reserves the right to discipline any employee taking part in any violation of this provision of the Agreement, or engaging in any willful destruction or defacing of Company property. (Emphasis added.)

Agreement, Article III, § D.

Alaska argues this clause prohibits *any strike* during the term of the contract without first exhausting the administrative procedures set forth for resolving disputes. In support of its position, Alaska cites *Indianapolis Power & Light Co. v. Local 1395, International Brotherhood of Electrical Workers, AFL–CIO*, 273 N.L.R.B. No. 211 (1985), where the Board noted that the relationship between work stoppages and the honoring of picket lines is so well understood in the industrial climate that using the word "strike" includes work stoppages resulting from the refusal to cross picket lines. *News Union of Baltimore v. NLRB*, 393 F.2d 673, 676–77 (D.C.Cir.1968). In *Indianapolis Power*, the NLRB held, in accord with earlier decisions in several circuits [1] that:

> If a collective-bargaining agreement prohibits strikes, we shall read the prohibition plainly and literally as prohibiting all

---

**1.** *NLRB v. Rockaway News Supply Co.*, 345 U.S. 71, 73 S.Ct. 519, 97 L.Ed. 832 (1953); *United States Steel Corp. v. NLRB*, 711 F.2d 772 (7th Cir.1983); *W–I Canteen Service v. NLRB*, 606 F.2d 738, 748 (7th Cir.1979); *News Union of Baltimore v. NLRB*, 393 F.2d 673 (D.C.Cir.1968).

strikes, including sympathy strikes. If, however, the contract or extrinsic evidence demonstrates that the parties intended to exempt sympathy strikes, we shall give the parties' intent controlling weight. We therefore overrule such cases as *United States Steel* and *W–I Canteen Service* to the extent that the standard applied there is inconsistent with this holding.

273 N.L.R.B. No. 211 at 3.

In this case, the collective bargaining agreement says the union will not cause or permit, nor will any member of the union take part in *"any strike or work stoppage of any of the company's operations...."* Agreement, Article III, § D. (Emphasis added.) There is nothing in that language creating an exception for sympathy strikes. Furthermore, it is hard to imagine clearer language: the agreement prohibits "any strike."

Waiver of the right to conduct a sympathy strike must be clear and unmistakable. *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956); *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 103 S.Ct. 1467, 75 L.Ed.2d 387 (1983). The Union's main contention is that the no strike clause "is obviously addressed to primary strikes. It nowhere expressly addresses sympathy strikes. Hence, there is no 'clear and unmistakable' waiver." Plaintiff's Memorandum in Support of Preliminary Injunction at 17. In support of its position, Plaintiff cites *NLRB v. Southern California Edison Co.*, 646 F.2d 1352 (9th Cir.1981), where the Court found that a no strike clause, read in conjunction with an arbitration clause, *did not* constitute a "clear and unmistakable" waiver of the right to engage in a sympathy strike. However, *Southern California Edison* is distinguishable. In *Southern California Edison*, the NLRB determined there was no clear and unmistakable waiver because of insufficient evidence dealing with the intent of the parties. The Board determined, and the Ninth Circuit agreed, that the no-strike provision of the contract was implicitly tied to the arbitration clause in

the contract, and therefore was limited to arbitrable disputes. While the clause here also is tied to the arbitration clause and therefore, is very similar to that in *Southern California Edison*, that decision was based upon precedents the NLRB has discarded. The NLRB has abandoned and overruled its decisions in *United States Steel* and *W–I Canteen Service*, the authority upon which the *SCE* decision is grounded, and now reads a prohibition against strikes as "plainly and literally" prohibiting all strikes, including sympathy strikes.

■ The Union argues that the no-strike clause was not meant to cover sympathy strikes but only disputes arising under the agreement between the parties, not those between Alaska and a different bargaining unit over a different contract. But the wording of the contract prohibits *any strike* without first resorting to the arbitration procedures in the contract or the dispute resolution procedures of the RLA. Therefore, the sympathy walkout by the union violated the provisions of the contract.

## CONCLUSION

Considering the foregoing, the Court finds that:

1. The dispute between Plaintiff and Defendant is "minor" as defined by the jurisprudence under the Railway Labor Act, 45 U.S.C. § 151, *et. seq.* and therefore, this Court lacks jurisdiction to entertain this action; and

2. The actions of Plaintiff union in striking in sympathy with the mechanics unit of the International Association of Machinists violated the no-strike clause of the collective bargaining agreement between Plaintiff and Defendant and therefore, the union is not entitled to the protections of the Railway Labor Act, 45 U.S.C. § 151, *et. seq.*

Accordingly, the motion for preliminary injunction is DENIED and the complaint of Plaintiff IAM is DISMISSED.

The Clerk of the Court shall direct uncertified copies of this Order to counsel of record.