**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, and its affiliated District Lodge No. 143, and its affiliated Local Lodge No. 2202, Plaintiffs-Appellants,**

**v.**

**ALASKA AIRLINES, INC., Defendant-Appellee.**

**Nos. 86–3926, 86–3623.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1987.

Decided April 1, 1987.

David Campbell, Seattle, Wash., for plaintiffs-appellants.

Valerie L. Hughes, Bellevue, Wash., for defendant-appellee.

Before GOODWIN, SCHROEDER and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge:

International Association of Machinists and Aerospace Workers and local affiliates (IAMA), appeal the dismissal of their action for want of jurisdiction. IAMA sued to enjoin Alaska Airlines, Inc. (Alaska), from

implementing a bid and rehire plan adopted after a strike. In support of a motion for a preliminary injunction, IAMA argues that Alaska's plan was a *per se* violation of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Holding that the dispute was preempted by the exclusive jurisdiction of the Systems Board of Adjustment, the district court denied the motion for a preliminary injunction and *sua sponte* dismissed the case.

IAMA represents two separate divisions of Alaska Airlines employees. One division represents clerical, office and professional employees and the other division represents mechanics and employees in related occupations. The two divisions have had separate collective bargaining agreements with Alaska for a number of years. The bargaining agreements of the two divisions expire at different times.

In December 1983, the mechanics' agreement was opened for negotiations through procedures required by 45 U.S.C. § 156 of the RLA. After extended negotiations mediated by the National Mediation Board, the mechanics and Alaska were unable to agree on a new contract. On March 4, 1985, the mechanics called a strike. The strike was ultimately resolved by a back-to-work agreement which applied only to the mechanics' division.

Throughout the strike, the collective bargaining agreement of the clerical, office and professional workers with Alaska contained a "no-strike" clause prohibiting those employees from striking for the duration of their contract. During the course of the mechanics' strike, however, approximately 95 clerical, office and professional workers honored the mechanics' picket lines. Alaska hired replacement workers to fill the positions vacated by sympathy strikers. At the conclusion of the mechanics' strike, Alaska refused to rehire the clerical, office and professional sympathy strikers and rejected their offers to return to work.

Instead, Alaska established a recall plan under which priority for new jobs was given to employees who were hired as replacements and to clerical, office and profession-

al employees who crossed the picket lines. A number of sympathy strikers have been denied recall, or if recalled, have been placed in jobs of lower status than they held before the strike.

IAMA alleges that various features of Alaska's recall plan violate the RLA. Specifically, the complaint alleges that Alaska's (1) hiring of permanent replacements, (2) grant of superseniority status to replacements, and (3) refusal to provide relevant information relating to outstanding contractual grievances, all violate the RLA. Alaska's counterclaim asserts that the sympathy strikers violated the "no-strike" clause of the agreement and accordingly were properly discharged and replaced.

The district court, 639 F.Supp. 100 (Wash.1986) denied IAMA's motion for a preliminary injunction and dismissed the complaint on the ground that it lacked subject matter jurisdiction to hear the dispute. The existence of subject matter jurisdiction is an issue of law appropriate for de novo review. *Lord Jim's v. N.L.R.B.*, 772 F.2d 1446, 1448 (9th Cir.1985).

The district court held it lacked subject matter jurisdiction because IAMA's claims involved a "minor dispute" subject to the exclusive jurisdiction of the System Board of Adjustment.

■■■ The RLA is made applicable to the airline industry by 45 U.S.C. §§ 181–187. *See International Ass'n of Machinists v. Central Airlines*, 372 U.S. 682, 685–89, 83 S.Ct. 956, 958–60, 10 L.Ed.2d 67 (1983). Case law tends to classify disputes that arise between carriers and employee unions under the RLA as either "major" or "minor." *International Ass'n of Machinists v. Aloha Airlines*, 776 F.2d 812, 815 (9th Cir. 1985) (citing *Elgin, Joliet & Eastern Ry. v. Burley*, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945)). Major disputes concern statutory rights, such as the right to form collective bargaining agreements or to seek to secure new rights and incorporate them into future agreements. *Aloha Airlines*, 776 F.2d at 815. Federal courts have jurisdiction to decide major disputes. *International Ass'n of Machinists v. Northwest Airlines*, 673 F.2d 700, 706

(3d Cir.1982). Minor disputes, on the other hand, "concern the interpretation or application of collective bargaining agreements, and are resolved through binding arbitration before the System Board of Adjustment." *Aloha Airlines*, 776 F.2d at 815. Federal courts do not have jurisdiction to resolve minor disputes. *Id.*

Because this case does not involve a dispute over the formation of a collective bargaining agreement or efforts to secure new rights, IAMA understandably contends that the dispute is neither major nor minor, but involves violations of Section 2 of the RLA.[1] 45 U.S.C. § 152. The union argues that a statutory claim is not within the scope of the mandatory scheme for resolutions through arbitration. It cites several cases holding that in certain limited circumstances federal courts have jurisdiction over disputes arising from RLA violations whether the disputes are characterized as major or minor. *See Burke v. Compania Mexicana De Aviacion, S.A.*, 433 F.2d 1031 (9th Cir.1970). *See also, Northwest Airlines*, 673 F.2d 700 (3d Cir.1982); *Conrad v. Delta Airlines*, 494 F.2d 914 (7th Cir. 1974); *Ruby v. Taca Int'l Airlines*, 439 F.2d 1359 (5th Cir.1971); *Brotherhood of R.R. Trainmen v. Central of Georgia Ry. Co.*, 305 F.2d 605 (5th Cir.1962); *Local 808, Int'l Brotherhood of Teamsters v. P & W R.R. Co.*, 576 F.Supp. 693 (D.Conn.1983).

However, the authority IAMA cites is inapplicable to the facts before us. In each cited case, judicial involvement was the only means of enforcing the RLA. For example, in *Conrad* and *Burke*, plaintiffs were individual employees who alleged they were discharged for attempting to organize a union. As their discharges took place before their unions were certified, they could not get union representation or an administrative hearing.

In *Ruby*, the defendant airline had attempted to nullify the collective bargaining agreement by moving its operations to El Salvador. The case thus involved a fundamental attack on the collective bargaining process, rather than a breach of the agreement's terms. Further, only the federal courts had the power to enjoin the airline from carrying out its plan. This case, by contrast, does not involve a direct attempt to destroy a union. The System Board of Adjustment is fully equipped to decide the merits of the contract dispute.

■ IAMA's reliance on *Central of Georgia* is also misplaced. In that case, the court exercised jurisdiction over a union's claims that the carrier's discipline of a union representative was an attempt to interfere with its employees in their choice of representation. *Central of Georgia* has been limited to its facts. *Northwest Airlines*, 673 F.2d 707 n. 6; *Local 808, Int'l Brotherhood of Teamsters*, 576 F.Supp. at 703. As the Third Circuit pointed out, in *Central of Georgia*, the court "considered nothing but the 'bare bones' pleadings and therefore had to accept the allegations in the complaint as true." *Northwest Airlines*, 673 F.2d at 709. Those allegations were that the company's investigation of a union official was intended to coerce the employees in their choice of a representative. *Id.* In this case, of course, the plaintiff is a union rather than an individual employee, and IAMA has not shown that the System Board of Adjustment is unable to resolve its dispute. The legality of Alaska's recall plan will almost certainly depend on whether the employees violated the collective bargaining agreement by honoring picket lines. The System Board of Adjustment, not the federal courts, has jurisdiction to interpret the collective bargaining agreement. *Aloha Airlines*, 776 F.2d at 815. Therefore, while one possible interpretation of the contract may weaken the union's tactical position, this case does not present the exceptional circumstances requiring judicial intervention.

IAMA does not contend that Alaska was attempting to interfere with the workers' choice of a bargaining representative; the union alleges only that the recall plan weakens their union by replacing members, and so violated the RLA. This roundabout effort to reach a statutory violation is not a

---

1. Section 2 establishes the rights of parties to choose their own bargaining representatives and prohibits company interference with Union affairs.

sufficient ground for a court to assume jurisdiction.

Because IAMA cannot show a statutory violation sufficient to invoke the federal courts' jurisdiction, and does not contend that its claim involves a "major" dispute under the RLA, the district court properly dismissed the case for lack of subject matter jurisdiction.

AFFIRMED.