21 F.3d 551
 146 L.R.R.M. (BNA) 2001, 127 Lab.Cas. P 11,080
 Thomas D. MIKLAVIC; Richard R. Cornish; Charles G.
Hensler; Keith Skurka; Thomas F. Yost and Louis
F. Knoll, Individually and on Behalf of
Themselves and All Similarly
Situated Persons, Appellants
v.
USAIR INC., a Delaware Corporation.
 No. 93-3169.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 7, 1993.
Decided April 14, 1994.
 
 Dennis J. Clark, James L. Allen (Argued), Seymour M. Nayer, Plunkett & Cooney, Detroit, MI, for appellants.
 Betty Leach Hawkins, USAir, Inc., Arlington, VA, Thomas E. Reinert, Jr. (Argued), Morgan, Lewis & Bockius, Washington, DC, Sidney Zonn, Buchanan Ingersoll, Professional Corp., Pittsburgh, PA, for appellee.
 Before: HUTCHINSON, COWEN and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 Appellants appeal from two orders of a United States Magistrate Judge: one dismissing their action against USAir for lack of subject matter jurisdiction, and the other denying them leave to amend their complaint. We will affirm.
 
 I.
 
 2
 Appellants are fleet service personnel, otherwise known as baggage handlers, employed by USAir at the Pittsburgh, Philadelphia, Buffalo and Boston airports. These baggage handlers were represented by the International Brotherhood of Teamsters ("IBT") under a collective bargaining agreement, Article 26A of which entitled them to purchase life insurance at the same rates charged to nonunion employees. This was known as the "me-too" provision of the agreement. The agreement expired by its own terms in 1987, when the IBT filed a notice under section 6 of the Railway Labor Act (the "Act"), 45 U.S.C. Sec. 156, to have the agreement renegotiated.
 
 
 3
 Negotiations dragged on for several years until April 1991 when the IBT was decertified as appellants' bargaining agent. The next month appellants noticed that their payroll deductions for life insurance had been reduced for no apparent reason. From April through November, appellant Miklavic asked USAir management several times to explain the reduction, but was never given a reason despite promises that the matter was being studied.
 
 
 4
 In February 1992, without first filing a grievance, appellants filed suit in the district court alleging a breach of the collective bargaining agreement and fraud. Jurisdiction was asserted under the Act. USAir quickly moved to dismiss under Fed.R.Civ.P. 12(b)(1), alleging that the complaint presented only a minor dispute. Appellants then amended their complaint to add a claim for a violation of section 6 of the Act, contending that USAir refused to adhere to the status quo and honor the "me-too" provision during negotiations and after the contract expired.
 
 
 5
 Discovery was stayed pending the resolution of the jurisdictional issue, but appellants allegedly learned through "informal discovery" that the IBT, during contract negotiations, failed to take any action whatsoever to enforce the "me-too" provision. Appellants allege they could not have discovered this at the time the union failed to take action, nor did it come to light when the union was decertified. Nevertheless, although the IBT's conduct appeared to state a claim for breach of the duty of fair representation ("DFR"), appellants did not plead such a breach in their amended complaint.
 
 
 6
 USAir answered appellants' amended complaint and both parties consented to have the case heard before a United States Magistrate Judge under 28 U.S.C. Sec. 636(c)(1). The magistrate judge granted USAir's motion to dismiss for lack of subject matter jurisdiction because only a minor dispute was pleaded and no jurisdictional exception applied. Appellants then sought leave to amend their complaint a second time to add a hybrid claim against USAir for breach of the union's duty of fair representation. The magistrate judge denied leave, holding that this claim was time-barred and that amendment therefore would be futile. Our review of the subject matter jurisdiction issue is plenary, and we review the denial of leave to amend for abuse of discretion.
 
 II.
 A.
 
 7
 Appellants first challenge the magistrate judge's conclusion that this case presented only a minor dispute within the meaning of the Railway Labor Act. Although they concede that the causes of action pleaded in counts one and three of the amended complaint--breach of the collective bargaining agreement and fraud--constitute minor disputes, they argue that count two, which alleges a violation of section 6 of the Act, amounts to a major dispute.
 
 
 8
 This distinction between major and minor disputes is significant. "Congress placed great emphasis on negotiation and voluntary settlement rather than judicial resolution" of labor disputes under the Railway Labor Act. Association of Flight Attendants, AFL-CIO v. USAir, Inc., 960 F.2d 345, 347 (3d Cir.1992). Accordingly, "[f]ederal courts have broad powers to intervene in some major disputes, but the Act prohibits federal courts from becoming involved in minor disputes." Id. at 348. Minor disputes must be resolved through arbitration in a grievance proceeding or before a system board of adjustment. See 45 U.S.C. Sec. 184; Capraro v. United Parcel Serv. Co., 993 F.2d 328, 331 (3d Cir.1993).
 
 
 9
 Major disputes concern the making and modification of the collective bargaining agreement itself and relate
 
 
 10
 to disputes over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy. They look to the acquisition of rights for the future, not to assertion of rights claimed to have vested in the past.
 
 
 11
 Flight Attendants, 960 F.2d at 348 (quoting Consolidated Rail Corp. v. Railway Labor Exec. Ass'n, 491 U.S. 299, 302, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989)). On the other hand, a minor dispute is "a dispute arising or growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" and contemplates an existing agreement. Conrail, 491 U.S. at 303, 109 S.Ct. at 2480. The two types of disputes are distinguished as follows:
 
 
 12
 Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.
 
 
 13
 Id. at 307, 109 S.Ct. at 2483.
 
 
 14
 Appellants' theory why count two of the amended complaint presents a major dispute is not that USAir breached the collective bargaining agreement, but that when the IBT issued its section 6 notice, the contract was allowed to terminate and the Act's status quo provisions became applicable. Thus, they assert, the issue is not whether USAir breached the "me-too" provision in the contract, admittedly a minor dispute, but whether the Act itself independently required USAir to abide by this term of the old contract during the status quo period. They argue that unless the Act itself allowed USAir to breach the "me-too" clause and alter the status quo, any argument USAir might have under the terms of the agreement would be frivolous, thus creating a major dispute. Also implicit in this argument is the premise that the issue concerns the prospective modification of a contract and itself presents a major dispute. According to appellants, when the collective bargaining agreement expired and the union filed its section 6 notice, the issue pleaded in count 2 became a major dispute subject to the jurisdiction of a federal district court. Although this reasoning has some surface appeal, we reject the argument.
 
 
 15
 In International Ass'n of Machinists & Aerospace Workers v. Aloha Airlines, Inc., 776 F.2d 812 (9th Cir.1985), the Court of Appeals for the Ninth Circuit held that where a collective bargaining agreement had expired and a section 6 notice was filed, a disagreement over wages was a major dispute. The court reasoned that when the contract expired and the section 6 notice was filed, the Act itself mandated that the status quo be maintained and "there was simply no existing collective bargaining agreement to interpret." Id. at 816. Accordingly, because the dispute no longer looked to the interpretation of a collective bargaining agreement, it was no longer a minor dispute.
 
 
 16
 Three years later, this view was repudiated. The Court of Appeals for the District of Columbia Circuit in Air Line Pilots Ass'n v. Eastern Air Lines, Inc., 863 F.2d 891 (D.C.Cir.1988), rejected Aloha, finding no reason why a dispute that is independent of the collective bargaining agreement and occurs after the twin occurrences of contract expiration and a section 6 filing should be automatically treated as major when, a short time earlier, it would unquestionably have been found to be minor. Id. at 898-99. It also reasoned that such a dispute does not look toward "the acquisition of rights for the future," the traditional standard for finding a major dispute, but only toward "rights claimed to have vested in the past," which normally indicates only a minor dispute. More importantly, the court noted that the Railway Labor Act sets forth two tracks for resolving disputes: arbitration for minor disputes and district court jurisdiction for major ones. It then pointed out that "[t]he expiration of the collective bargaining agreement tells us little or nothing about the track for which a dispute is suitable." Id. at 899. Instead, the Aloha rule implies that once the agreement expires and a section 6 notice is filed, no dispute can ever proceed along the "minor" track. Id.
 
 
 17
 We agree with the reasoning of Eastern Air Lines and also reject Aloha. Making major dispute status automatic when the collective bargaining agreement expires and a section 6 notice is filed would be especially problematic because collective bargaining agreements in the transportation industry often take several years to negotiate. See William E. Thomas & Frank J. Dooley, Airline Labor Law 59 (1990). To follow Aloha would mean that every dispute, no matter how firmly based in the existing but expired contract and no matter how insignificant, would become a major dispute subject to federal court jurisdiction. The Aloha rule upsets settled law governing post-expiration disputes that the mere filing of a section 6 notice does not turn a minor dispute into a major one. See General Committee of Adjustment v. CSX Railroad Corp., 893 F.2d 584, 594 (3d Cir.1990). We see no valid reason for making an exception to that rule merely because of the "twin occurrences" of contract expiration and section 6 filing. We will accordingly affirm this portion of the magistrate judge's ruling.
 
 B.
 
 18
 There are, however, limited exceptions that allow a minor dispute to be heard in a judicial forum. Courts have jurisdiction to hear a minor dispute when: 1) the employer repudiates the private grievance machinery; 2) resort to administrative remedies would be futile; 3) the employer is joined in a DFR claim against the union; 4) the union's DFR breach causes the employee to lose the right to present his or her grievance. Capraro, 993 F.2d at 334 (discussing Childs v. Pennsylvania Fed'n Bhd. of Maintenance of Way Employees, 831 F.2d 429, 437-39 (3d Cir.1987)).
 
 
 19
 Appellants assert that even if the dispute here is minor, federal courts have jurisdiction because the union had already been decertified by the time they discovered the life insurance premium violation and administrative remedies would thus be futile. At that point, they argue, they had neither a contract nor a champion. USAir responds that the IBT was obligated to arbitrate the employees' claims even after decertification, or, irrespective of the union, that the employees themselves were both authorized and obligated to arbitrate on their own behalf.
 
 
 20
 There is, of course, no question that a dispute that arises under the expired contract but ripens only after expiration remains arbitrable when the union remains certified as the employees' bargaining agent. See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 255, 97 S.Ct. 1067, 1074, 51 L.Ed.2d 300 (1977). There is also authority that, when a union is decertified after filing a grievance and continues nevertheless to prosecute it on behalf of its former members, the dispute remains arbitrable. Association of Flight Attendants v. Delta Air Lines, Inc., 879 F.2d 906, 907-08 (D.C.Cir.1989). Moreover, there is a strong federal policy in favor of arbitrating labor disputes. See, e.g., Federated Metals Corp. v. United Steelworkers of America, 648 F.2d 856, 859 (3d Cir.) (citing cases), cert. denied, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). Whether a union must arbitrate an employee's claim under an expired contract when that claim ripens only after decertification, however, is a matter of first impression which we need not and do not decide.
 
 
 21
 In contrast to other labor statutes such as the Labor Management Relations Act, nothing in the Railway Labor Act prevents an employee from bringing an arbitration on his or her own behalf, without the support of a union. 45 U.S.C. Sec. 153 First (j); see Landers v. National Rail Passenger Corp., 485 U.S. 652, 654, 108 S.Ct. 1440, 1441, 99 L.Ed.2d 745 (1988); Childs, 831 F.2d at 433, 438, 439; Masy v. New Jersey Transit Rail Operations, Inc., 790 F.2d 322, 326-27 (3d Cir.1986); Kaschak v. Consolidated Rail Corp., 707 F.2d 902, 906-08 (6th Cir.1983); Schum v. South Buffalo Ry. Co., 496 F.2d 328, 329-30 (2d Cir.1974). Moreover, in Landers, an Amtrak engineer was disciplined for violating company work rules. Rather than rely on a union to which he did not belong, he represented himself at the disciplinary hearing. We conclude that although appellants may have wanted the IBT to represent them, the fact that it did not does not bar appellants from prosecuting their dispute or employing private counsel to so on their behalf.
 
 
 22
 More importantly, both parties have misconstrued the nature of the futility exception itself. A proceeding in arbitration is futile only when, through bias, prejudice or predisposition on the part of the arbitration board, there would be no point in submitting the claim to arbitration. Childs, 831 F.2d at 438 (discussing cases); accord Capraro, 993 F.2d at 335-36. Here, appellants do not allege that arbitration would be futile because the arbitrator would be hostile to their claim; rather, they assert that arbitration is impractical because the union cannot realistically be expected to take up their cause after decertification. Given the limited scope of the futility exception, appellants have not shown a sufficient basis to confer jurisdiction on the courts.
 
 III.
 
 23
 Appellants also argue that the magistrate judge abused his discretion by denying them leave to amend their complaint. Appellants proposed to add an additional count alleging that the IBT breached its duty of fair representation during contract negotiations by failing to object to USAir's failure to honor the "me-too" premium parity provision. This claim is alleged to fit within the fourth jurisdictional exception recognized in Childs, which permits courts to resolve a dispute when the union's DFR breach causes the employee to lose the right to present his or her grievance. See 831 F.2d at 441.[1] The magistrate judge denied appellants' motion on the sole ground that the proposed claim was time-barred and thus amendment of the complaint would be futile.
 
 A.
 
 24
 Under the Railway Labor Act, the applicable limitations period for a DFR claim against a union is six months. Id. at 433; accord Sisco v. Consolidated Rail Corp., 732 F.2d 1188, 1193 (3d Cir.1984). By analogy, the same period applies to hybrid claims against the employer. Childs, 831 F.2d at 433; Vadino v. A. Valey Engineers, 903 F.2d 253, 261 (3d Cir.1990) (LMRA sec. 301). The limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Vadino, 903 F.2d at 260 (quoting Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir.1986)).
 
 
 25
 Here, appellants allege that they did not become aware of the excessive life insurance premiums until shortly after the union was decertified on April 26, 1991. Thus, they maintain that they could not have been aware of the IBT's breach of its DFR until that date. USAir does not argue otherwise, nor does it assert that the appellants should have been reasonably aware of the difference in premiums before the IBT was decertified. We agree with appellants that absent tolling, the limitations period began to run on the date the union was decertified.
 
 
 26
 Moreover, even if the appellants were somehow aware of the IBT's alleged breach earlier, our cases indicate that this knowledge should not alter our conclusion. In Childs, we held that a DFR claim does not accrue while the union continues actively to represent the employee and proffers "rays of hope" to the employees that their cause will ultimately prevail. There, the employee-plaintiff was aware of certain facts that indicated a DFR breach a full two years before his claim was finally arbitrated against him. Nevertheless, we held that the DFR cause of action accrued on the date the arbitration board decided the case. 831 F.2d at 436.
 
 
 27
 In Vadino, moreover, we likewise held that "[t]he relevant statute of limitations question ... is not when [the employee] knew, or should have known, that the employer breached the contract but also when he knew, or should have known, that further appeals to the Union would be futile." 903 F.2d at 261. Here, the appellants had a right to rely on their union's attempts to secure the benefits of the "me-too" clause as long as it continued good faith negotiations with USAir. It is conceivable that the union was attempting to get something better than "me-too" in the next contract, or perhaps was seeking to enforce the provision retroactively. Only when the union was decertified were the "rays of hope" extinguished. Thus, regardless of when appellants knew of the IBT's alleged DFR breach, it appears the limitations period could not have begun to run until the IBT was decertified.
 
 
 28
 Appellants, however, filed their complaint on February 28, 1992, some ten months after the IBT was decertified. As a result, their proposed DFR claim would still appear to be time-barred. Nevertheless, they make a strong argument that their DFR claim is timely. They assert that when an employer leads an employee to believe that his or her dispute is being handled informally and amicably through company channels, the employer is equitably estopped from asserting the statute of limitations until efforts to resolve the situation are either completed or broken off. Applying that rule to this case would mean that appellants' DFR claim did not accrue until November 1991, the date Miklavic stopped pursuing the matter of premium discrepancies with USAir management, making the original complaint filed in February 1992 timely.[2]
 
 
 29
 Appellants premise this argument on Vadino. In that case, we assumed, without deciding, that employer conduct which purported to amicably resolve a dispute but which instead lulled the employee into a false sense of security until after the limitations period expired could be grounds for equitable tolling. On the facts before the Vadino court, however, it was not necessary to reach the issue; there was no actual reliance on the employer's statements, nor would reliance have been reasonable in any event. 903 F.2d at 263-64.
 
 
 30
 Although the equitable tolling principle expressed in Vadino was dictum, it appears to be a sound rule, rooted in two principles. The first, that a party should not be permitted to profit from its own wrong, is well-established in our jurisprudence. If USAir intentionally "strung appellants along" until the limitations period expired, it would be manifestly unjust to hold that appellants' DFR claim is now time-barred. The second is that the policy of the Railway Labor Act, and indeed the labor laws in general, is to resolve disputes without litigation whenever possible. Nevertheless, we need not and do not decide whether the DFR claim was time-barred because we find that granting leave to amend would have been futile on another ground.
 
 B.
 
 31
 In Childs, we followed the holdings of Kaschak and Schum that, "where a breach of the DFR by the union causes the employee to lose his right to press his grievance before the Board [of adjustment], the employee may sue the railroad in federal court." 831 F.2d at 438-39 (emphasis added). There, an employee accused by his employer of reporting to the wrong work location was represented by his union in a proceeding before the National Railroad Adjustment Board. Unfortunately, the union made an ill-advised concession to management to close the record, making it impossible for Childs to present a list of witnesses to support his version of the facts. As a result, Childs lost the arbitration. Id. at 432-33. Because "the union alone foreclosed his introduction of the witness list[,]" id. at 440, and there was a causal link between the union's DFR breach and Childs' loss, we held that subject matter jurisdiction existed. Id. at 441. In so holding, however, we stated:
 
 
 32
 The exception that we recognize today is a narrow one and cannot be interpreted as undermining the general rule of exclusive NRAB jurisdiction for minor disputes. Rather, ... we attempt to address the rare case in which the union, by breaching its DFR, effectively precludes the employee's opportunity for obtaining relief before the NRAB. In setting the standard for this fourth exception, we adopt the Sixth Circuit's specifically narrow approach. The Kaschak Court imposed the heavy burden on the employee-plaintiff of showing that the union's breach of its DFR precluded his recovery from the railroad, and that his reliance on the union was reasonable.
 
 
 33
 831 F.2d at 441.
 
 
 34
 Appellants' situation here does not fit within the fourth exception recognized in Childs. Although the IBT may have breached its DFR during contract negotiations with USAir in 1987, it took no action then to thwart appellants' ability to present their grievance on their own after decertification. When the union was decertified in 1991 and appellants noticed the discrepancy in their insurance premiums, they were free to file a timely grievance, even without the IBT. That they failed to do so is simply no fault of the union. It did not arbitrate poorly on their behalf and ruin appellants' case, as happened in Childs, nor did it put appellants in a position such that following the DFR breach their personal grievances would have been time-barred, as in Kaschak and Schum. See 707 F.2d at 908; 496 F.2d at 331. Accordingly, we conclude that the causal link required by Childs between the IBT's DFR breach and appellants' ability to arbitrate their grievances is simply not present here.
 
 IV.
 
 35
 Because appellants' case presents only a minor dispute within the meaning of the Railway Labor Act and none of the four jurisdictional exceptions applies, we will affirm both the magistrate judge's order dismissing their first amended complaint for lack of subject matter jurisdiction and its order denying them leave to amend their complaint.
 
 
 
 [1]
 Although a breach of the union's DFR is alleged for jurisdictional purposes and must be proved at trial, it is not necessary that the union be joined as a defendant. Vadino v. A. Valey Engineers, 903 F.2d 253, 261 (3d Cir.1990)
 
 
 [2]
 Because the DFR claim arose out of the same conduct as the other claims, the proposed amended complaint would relate back to the date of the original complaint. See Fed.R.Civ.P. 15(c)(2)