**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,
        *Plaintiff-Appellee,*

        v.

ANTHONY PAUL BRENNEKE,
        *Defendant-Appellant.*

No. 06-36077

D.C. No.
CV 06-0303 AA

OPINION

Appeal from the United States District Court
for the District of Oregon
Ann Aiken, District Judge, Presiding

Submitted October 24, 2008*
Portland, Oregon

Filed January 9, 2009

Before: A. Wallace Tashima and Milan D. Smith, Jr.,
Circuit Judges, and George H. Wu,** District Judge.

Opinion by Judge Wu

---

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable George H. Wu, United States District Judge for the Central District of California, sitting by designation.

161

**COUNSEL**

Kim D. Stephens, Seattle, Washington, for the defendant-appellant.

Jan D. Sokol and Tyler J. Storti, Portland, Oregon, for the plaintiff-appellee.

---

**OPINION**

WU, District Judge:

The principal issue herein is the sufficiency of service under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 4(e) by the placement of the summons and complaint within a defendant's physical proximity. Appellant Anthony Paul Brenneke ("Brenneke") appeals from a summary judgment entered against him in favor of Appellee Travelers Casualty and Surety Company of America ("Travelers") in the amount of $211,300. Brenneke contends that the district court lacked jurisdiction over him because he was never properly served, and that it erred in finding that he had waived his right to challenge personal jurisdiction. He further claims that Travelers presented insufficient evidence of damages for the court to have properly made any damage award. Rejecting those contentions, we affirm the district court's decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 6, 2006, Travelers filed a complaint against Brenneke, NSP Development, Inc. ("NSP"), and Sherwood H.D., LLC ("Sherwood") (collectively "Defendants"), seeking recovery under a Commercial Surety Bond Application ("Indemnity Agreement") which the Defendants had executed in favor of Travelers. The Indemnity Agreement was executed in connection with a *supersedeas* bond ("Bond") which was

posted in conjunction with the Defendants' appeal of certain judgments entered in state court against them and in favor of an entity called Polygon Northwest Company ("Polygon"). The Bond was in the sum of $297,503. Under the Indemnity Agreement, the Defendants agreed to indemnify Travelers:

> . . . from and against any and all damages, loss, costs, charges, and expenses of whatsoever kind or nature, including counsel or attorney's fees, whether incurred under retainer or salary or otherwise, which it shall or may, at any time, sustain or incur by reason or in connection with furnishing any Bond, including any investigation related thereto.

The Indemnity Agreement further provided that, upon receipt of notice that a demand had been made against the Bond, the Defendants would pay Travelers the full amount of the demand plus any necessary fees within three business days before payment of the demand was due. Failure to make such payment to Travelers would cause the Defendants/indemnitors to be additionally liable for all reasonable costs and expenses, including attorney fees, incurred by Travelers to enforce the Indemnity Agreement. Ultimately, a demand was made and Travelers notified Brenneke that the sum of $297,503 was required. Brenneke never responded to that notice or to Traveler's subsequent demands for indemnification.

After the Defendants had failed to timely respond to the complaint, Travelers filed a "Motion for Order of Default and Judgment" against them. Brenneke filed a "Response in Opposition to Motion for Entry of Default" and his declaration, stating that he had never been served with the summons and complaint. Brenneke had previously filed a "Notice of Appearance" indicating his intent to appear and defend in the action (and purporting to preserve "any objections to the jurisdiction of the court").

In connection with its motion to enter default, Travelers submitted the affidavit of Phil Sheldon ("Sheldon"), a process server for Barrister Support Service, which Travelers had hired to effectuate service upon Brenneke. Sheldon stated that he had experienced "significant difficulty" in serving Brenneke in the past, and that he was aware of other process servers' having experienced similar difficulty. He also indicated that he had successfully served legal documents personally on Brenneke on prior occasions. As to the current matter, he stated that he had made four separate visits to Brenneke's home between March 17, 2006 and April 2, 2006, attempting to accomplish service. No one answered the door or intercom even though, on more than one occasion, there were two or three vehicles in the driveway. On both his first and third visits to that residence, Sheldon left a note for Brenneke to contact Barrister Support Service, but he did not do so. During what was apparently the fifth attempt, on the evening of April 2, 2006, an adult male answering to the name of Paul Brenneke responded to Sheldon's ringing on the intercom at Brenneke's residence. When Sheldon identified himself as a process server, that person responded "Oh great," but never opened the door. However, Sheldon observed Brenneke standing behind the window next to the front door watching him. Sheldon then held the summons and complaint out towards the window, and announced in a loud voice "You are served." Sheldon further indicated that Brenneke watched him place the documents on the doorstep. Sheldon thereafter completed a proof of service form.

The district court granted Travelers' motion for entry of default as against NSP and Sherwood, but denied it as to Brenneke. As part of that order, Brenneke was required to file an answer within the next ten days. Brenneke did so. The only affirmative defense stated in that answer was a lack of personal jurisdiction based on the absence of personal service.

Travelers filed a motion for summary judgment supported by the affidavit of Edward M. Connelly ("Connelly"), "a

Bond Claim Manager, Salvage [for] St. Paul Travelers, which is an entity that owns 100% of Plaintiff [Travelers]." Connelly stated that he was "the individual at Travelers in charge of this Brenneke file." He described Travelers' posting of the $297,503 Bond and the eventual execution of the Indemnity Agreement by Brenneke in his capacities as President of NSP, the "Managing Member" of Sherwood, and individually. Connelly further stated that:

> As of the date of this Affidavit, Travelers is still owed at least $211,300. This balance owing consists of the balance remaining on the amount paid out to Polygon on the Bond plus other amounts, including attorneys fees, costs, and expenses incurred by Travelers to date in enforcing its rights under the Indemnity Agreement, all with accrued interest at the rate of 6.825% from the respective dates paid through June 26, 2006. In addition, Travelers also continues to incur expenses, costs, and attorney fees in this action . . . .

In an "Opinion and Order" granting Travelers' summary judgment motion, the district court rejected Brenneke's lack of personal jurisdiction affirmative defense concluding that he was "properly served with the Summons and Complaint in this action as a matter of law." In doing so, the court noted that "Brenneke's response does not address or respond to any facts contained in the Sheldon Affidavit." Further, the court found undisputed evidence of damages based on statements in and exhibits attached to the Connelly affidavit.

## DISCUSSION

I. *Travelers substantially complied with Fed. R. Civ. P. 4(e)(1) and (2).*

A. Applicable law and standard of review

[1] "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance

with Fed. R. Civ. P. 4." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). A district court's interpretation of the Federal Rules of Civil Procedure is reviewed *de novo*. *Cal. Scents v. Surco Prods., Inc.*, 406 F.3d 1102, 1105 (9th Cir. 2005); *Atchison, Topeka & Santa Fe Ry. v. Hercules Inc.*, 146 F.3d 1071, 1073 (9th Cir. 1998). The district court's determination whether personal jurisdiction can be exercised is a question of law reviewable *de novo* when the underlying facts are undisputed. *FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir. 1987).

**[2]** So long as a party receives sufficient notice of the complaint, Rule 4 is to be "liberally construed" to uphold service. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). However, "neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4." *Benny*, 799 F.2d at 492 (citation and quotes omitted).

B.   Analysis

Brenneke's only basis for challenging the district court's jurisdiction over him is his argument that he was not properly served. There is sufficient undisputed evidence to conclude that Travelers substantially complied with Fed. R. Civ. P. 4(e)(1) and (2).[1]

---

[1]Fed. R. Civ. P. 4(e) provides:

**(e)   Serving an Individual Within a Judicial District of the United States.**   Unless federal law provides otherwise, an individual — other than a minor, an incompetent person, or a person whose waiver has been filed — may be served in a judicial district of the United States by:

(1)  following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

Here, although the process server was unable to effect in-hand service upon Brenneke, the district court reasonably concluded that Travelers' service of the summons and complaint satisfied the requirements for personal service under Rule 4(e)(2). As noted in 4A Wright & Miller, *Federal Practice and Procedure* § 1095 at 516-17 (3d ed. 2002):

> If the defendant attempts to evade service or refuses to accept delivery after being informed by the process server of the nature of the papers, it usually is sufficient for the process server to touch the party to be served with the papers and leave them in defendant's presence or, if a touching is impossible, simply to leave them in the defendant's physical proximity. It is not crucial in these circumstances that the defendant does not take the papers into his or her possession. Since this procedure satisfies the objective of giving notice to the party to be served, it seems to be entirely sufficient to satisfy the delivery requirement of Rule 4(e)(2). [Footnote omitted.]

[3] Sufficient service may be found where there is a good faith effort to comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service. As

---

(2) doing any of the following:

  (A) delivering a copy of the summons and of the complaint to the individual personally;

  (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

  (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

observed in *Doe 1 v. Liu Qi*, 349 F.Supp.2d 1258, 1275 n.5 (N.D. Cal. 2004), "[w]here a defendant attempts to avoid service *e.g.* by refusing to take the papers, it is sufficient if the server is in close proximity to the defendant, clearly communicates intent to serve court documents, and makes reasonable efforts to leave the papers with the defendant." Travelers cites the case of *Errion v. Connell*, 236 F.2d 447, 457 (9th Cir. 1956), in which a sheriff's tossing papers through a hole in a screen door at defendant's home after speaking to her was found to be adequate personal service. *Errion* is sufficiently apt to this case, and Brenneke has not attempted to distinguish it.

**[4]** Brenneke's contrary arguments are deficient. He initially states that "Travelers' inability to demonstrate positive identification of [him] is consistent with [his] affidavit in which he states that he was never served with the summons and complaint." However, in his "Response to Plaintiff's Motion for Summary Judgment," Brenneke offered no evidence to rebut the factual statements in Sheldon's affidavit.[2] Sheldon indicated that he had personally served Brenneke before and that Brenneke identified himself on the intercom during the evening in question. While Brenneke noted that his girlfriend and children were not served at his home, substituted service clearly is not a requirement for personal service but merely an alternate means by which service may be accomplished. Finally, Brenneke argues that his attorney, with whom Travelers had been dealing in other lawsuits, should have been asked if he would accept service on his behalf. This obviously is not required either.

---

[2]Brenneke's declaration contained only five sentences that were either mere legal conclusions (*e.g.*, "I have not been served with any summons or complaint involving Travelers.") or factual averments which did not conflict with the statements in Sheldon's affidavit (*e.g.*, "I have not received any legal papers *in the mail at home or at any corporate post office.* [Emphasis added.]").

Travelers also argues that by effecting service under the State of Oregon's procedural rules, it has satisfied Fed. R. Civ. P. 4(e)(1). Rule 7D(1) of the Oregon Rules of Civil Procedure ("ORCP") provides that summons shall be served:

> . . . in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend.

Moreover, ORCP 7G provides in part that:

> If service is made in any manner complying with subsection D(1) of this rule, the court . . . shall disregard any error in the service of summons that does not violate the due process rights of the party against whom the summons was issued.

The Oregon Supreme Court has endorsed a liberal interpretation of the service rules. *See*, *e.g.*, *Lake Oswego Review, Inc. v. Steinkamp*, 695 P.2d 565, 568 (Or. 1985) ("[W]hen a defendant actually does get notice, defects in form of summons or method of service of summons do not invalidate service. A defendant who received actual notice can hardly assert that summons was not served by a manner calculated to give notice.") (quoting Merrill, *Jurisdiction Over Parties; Service of Summons (Rules 4-7), reprinted in* Oregon Law Institute, Oregon Civil Procedure Rules 1980, at 237 (1979)).

**[5]** Although "actual notice is not enough to trigger the application of ORCP 7G," *Levens v. Koser*, 869 P.2d 344, 346 (Or. Ct. App. 1994) (citation omitted), Travelers relies not only upon actual notice but also its reasonable steps to comply with Oregon's service provisions. *Levens*, which is Brenneke's only cited case on this issue, is readily distinguishable from the present situation. In *Levens*, the court held that an attempt to serve the defendant by leaving the papers with his mother at her house, which was not the defendant's residence

at that time, was not valid substituted service. Here, Travelers' service on Brenneke was at his residence, in his presence, and executed in a manner reasonably calculated to apprise him of the existence of the lawsuit and to afford him an opportunity to appear and defend.

**[6]** There was valid service herein under both Fed. R. Civ. P. 4(e)(1) and 4(e)(2).

II.   *The district court's order requiring Brenneke to initially file an answer was not in error.*

As his second issue on appeal, Brenneke claims that he has not waived the defense of lack of service of process. This argument is somewhat odd because the district court clearly addressed whether there was valid service when the issue was raised and decided in the motion for summary judgment. There was never any indication that the district court considered Brenneke to have waived that challenge.

**[7]** Perhaps what Brenneke meant is that he should have been allowed to file a motion under Fed. R. Civ. P. 12(b)(2) before being required to file an answer. In such a motion, Travelers would have had the burden of establishing that service was proper. *See, e.g., Fireman's Fund Ins. Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996) (non-moving party has burden of establishing personal jurisdiction). However, that is approximately the same burden that applied to Travelers in its motion for summary judgment, where it raised that issue and was required to show that there was no material factual dispute regarding the validity of service. It is impossible to see how Brenneke could have been prejudiced by not having been allowed to initially file a Rule 12(b)(2) motion.

III.  *The district court correctly awarded damages.*

A.  Standard of Review

"The district court's grant of summary judgment is reviewed *de novo*. Thus, our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Suzuki Motor Corp. v. Consumers Union of United States, Inc.*, 330 F.3d 1110, 1131 (9th Cir. 2003) (citations omitted). Fed. R. Civ. P. 56(c) provides in part: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

B.  Analysis

[8] Brenneke's final contention on appeal is that there is no competent evidence in the record that supports the amount of damages awarded. Evidence of the amount of damages was presented by Travelers in connection with its summary judgment motion by means of the Connelly affidavit and its accompanying exhibits. While somewhat inconclusive as to the *total* amount of damages, for the purpose of an opposed motion for summary judgment, the Connelly affidavit was sufficient to shift the burden to Brenneke to demonstrate the existence of a triable issue of fact with respect to those damages. *See* Fed. R. Civ. P. 56(e)(2); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

As stated in the Connelly affidavit, Travelers did pay out $297,503 to Polygon and was entitled to interest on that amount plus attorney fees and costs in connection with enforcing its rights under the Indemnity Agreement. Travelers also negotiated with Polygon for the assignment of additional outstanding judgments ("Assigned Judgments") that had been previously entered against Brenneke, NSP, and Sherwood in the underlying state litigation. While Travelers did receive

$209,025 from the Multnomah County Sheriff's Office as a result of a writ of execution on Brenneke's residence in satisfaction of one of the Assigned Judgments, Connelly stated under oath that there remained "at least $211,300" which was still owed and unpaid by Brenneke. Brenneke, in response, offered no evidence to controvert Travelers' admissible evidence. Indeed, Brenneke's arguments did not deal with the issue of the amount of damages at all. Hence, there was no evidentiary submission from Brenneke to rebut Connelly's sworn statement (and accompanying exhibits) to the effect that Travelers is still owed "at least" $211,300, which is the sum contained in the district court's damage award.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.