**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SEIU UNITED HEALTHCARE WORKERS-WEST, *Petitioner-Appellant*, <br><br> v. <br><br> LOS ROBLES REGIONAL MEDICAL CENTER, *Respondent-Appellee*. | No. 13-55672 <br><br> D.C. No. 2:12-cv-09387-R-SH <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Submitted March 6, 2015[*]
Pasadena, California

Filed December 3, 2015

Before: Harry Pregerson, Barrington D. Parker, Jr.[**],
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Pregerson

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[**] The Honorable Barrington D. Parker, Jr., Senior Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

**SUMMARY***

**Labor Law**

The panel reversed the district court's summary judgment and vacated its order dismissing a petition to compel arbitration under Section 301 of the Labor Management Relations Act.

Service Employees International Union, United Healthcare Workers-West, and Los Robles Regional Medical Center were parties to a collective bargaining agreement. The Union sought arbitration of a grievance objecting to the Medical Center's reorganization of its engineering department.

The panel held that the Union's petition to compel arbitration was not barred by Section 301's six-month statute of limitations because the limitation period did not begin to run until the Medical Center officially replied to the Union's letter demanding arbitration. Reading the record in the light most favorable to the Union, the non-moving party, the panel concluded that an earlier email from the Medical Center did not "make it clear" that the Medical Center refused to arbitrate because the Union did not request arbitration until after the email was sent. The panel concluded that the Medical Center's delay in responding to the Union's letter demanding arbitration must be considered a violation of good faith because the five-month delay was a period of time nearly equal to the entire six-month limitation period.

---

*** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's grant of summary judgment and remanded for further proceedings. It vacated the district court's award of costs for reconsideration in light of the reversal of summary judgment.

## COUNSEL

Bruce A. Harland, Monica T. Guizar, and Jacob J. White, Weinberg, Roger, & Rosenfeld, PC, Los Angeles, California, for Petitioner-Appellant.

Paul Ramsey Beshears, Ford & Harrison, LLP, Atlanta, Georgia; Michelle B. Abidoye, Ford & Harrison, LLP, Los Angeles, California for Respondent-Appellee.

## OPINION

PREGERSON, Circuit Judge:

Service Employees International Union, United Healthcare Workers-West (the Union) appeals the district court order granting summary judgment to Los Robles Regional Medical Center (the Medical Center) and dismissing the Union's Petition to Compel Arbitration under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

The district court ruled that the Union's September 20, 2012 Petition to Compel Arbitration was time barred by Section 301's six-month statute of limitations. The district found that the limitations period started to run on December 2, 2011, when the Medical Center emailed an "unequivocal, express rejection of the union's request for arbitration."

*Local Joint Exec. Bd. v. Exber, Inc.*, 994 F.2d 674, 676 (9th Cir. 1993).   The Union disputes that Medical Center's December 2, 2011 email "[made] it clear" that the Medical Center refused to arbitrate.  *Id*. at 676.  The Union argues that Section 301's six-month limitation period did not begin to run until the Medical Center officially replied on June 22, 2012, to the Union's January 17, 2012 letter demanding arbitration.

We have jurisdiction under 28 U.S.C. § 1291.  We reverse the grant of summary judgment, vacate the district court's order dismissing the Petition to Compel Arbitration, and remand to the district court for further proceedings.  We also vacate the award of costs in light of our reversal of summary judgment.[1]

I.

A.  The Dispute

The Union and the Medical Center were parties to a Collective Bargaining Agreement (the Agreement) effective January 21, 2011, through March 31, 2014.  The Medical Center campus pertinent to this litigation is located in Thousand Oaks, California.

Edwin Valdez, the Union's representative, filed a grievance on October 5, 2011, objecting to the Medical Center's reorganization of the engineering department.  The Medical Center's reorganization eliminated four Stationary Engineer positions and created the new bargaining unit of

---

[1] The costs of this appeal are taxed against the Medical Center.  *See* Fed. R. App. P. 39(a)(3).

Boiler Attendant.[2]   The four former Stationary Engineers were re-designated as Boiler Attendants, which resulted in a significant cut to their pay.  The grievance alleged violations of articles 32,[3] 44,[4] and 60[5] of the Agreement.

The Union alleged that the Medical Center violated the Agreement because the reorganization: (1) resulted in loss of wages to its members; (2) was retaliatory because of the engineers' safety complaints; and (3) was made during a period that was covered by the Agreement.

The Agreement provides for a three-step sequential process for resolving employment grievances.  At Step 1, the Union must file its grievance in writing with the Medical Center.  The Medical Center must respond in writing, and the

---

[2] The Medical Center claims that California Code of Regulations, Title 8, § 781 forced the reorganization of the engineering department and the creation of  the new position of Boiler Attendant.  This portion of the California Code of Regulations was last amended in December 31, 1974. An email message concerning the safety of the Medical Center's boilers from a Union field representative on February 14, 2011, brought California Code of Regulations, Title 8, § 781 to the attention of the Medical Center.

[3] Article 32 of the Agreement states: "This Agreement shall be effective January 21, 2011 and shall remain in full force and effect without change, addition, or amendment through March 31, 2014."

[4] Article 44.1 of the Agreement states: "Neither [the Medical Center] nor the Union shall discriminate against an employee based on Union Activity."

[5] Article 60 of the Agreement pertains to wages.  In particular, Article 60.1 grants the employer discretion for wage increases, but requires the Medical Center to notify the Union, as well as to meet and confer about proposed wage changes.

parties may schedule a Step 1 meeting to address the grievance. If the grievance is not resolved at Step 1, the Union may then move to Step 2 by written request. Again, the Medical Center must respond in writing, and the parties may schedule a Step 2 meeting to address the grievance. If the grievance is not resolved at Step 2, then the grievance may be sent to arbitration at Step 3. The Union is required to notify the Medical Center in writing of its intention to arbitrate. The Medical Center may agree to arbitrate, and the Agreement provides procedures for selecting a mutually-agreeable arbitrator.

On October 24, 2011, Valdez inquired whether the Medical Center would be willing to move the grievance directly to arbitration, which would mean jumping straight to Step 3 of the Agreement's grievance process. That same day, Jonathan Berke, the Medical Center's Labor Relations Director, denied Valdez's request, claiming that the Union did not provide information explaining how its claim was grievable and arbitrable. Berke stated that the matter was not grievable and was precluded from arbitration pursuant to Article 22 of the Agreement, which excludes the Medical Center's staff reduction decisions from arbitration.

The following day, October 25, Valdez met with Berke and Patrick Smith, the Medical Center's Director of Facilities Management, but the parties were unable to resolve the October 5 grievance during this meeting. Smith later described this October 25 event as "our Step-1 meeting."

On November 9, 2011, Smith informed Valdez via a formal letter on the Medical Center's letterhead, delivered electronically, that the grievance was "not subject to the grievance and arbitration procedure of [the Agreement]"

because it was covered by Article 22, *Reduction in Staff*, and not Articles 32, 44, and 60. This series of events corresponds with Step 1 of the Agreement's grievance process.

On November 28, 2011, Valdez requested that the Medical Center continue to follow the terms of the Agreement's grievance process and hold a Step 2 meeting with the Union. Berke refused to meet with Valdez. On December 2, 2011, Berke emailed Valdez, stating, "I am declining to process this grievance as this matter is neither grievable nor arbitrable." On December 15, 2011, Valdez sent an email to Berke stating, "[I]f you are refusing to schedule a step II meeting, we have no choice but to . . . move this matter to the next step (arbitration)." In response, Berke again declined to process the grievance that day.

Following the grievance process procedure, in a letter dated January 17, 2012, Valdez notified Berke that the Union appealed the grievance to Step 3—arbitration. With this notice, Valdez included an additional allegation that the Medical Center violated Article 41 of the Agreement by not providing notice and an opportunity to bargain with the Union before changing the job description of the bargaining unit.

Five months then passed with no response from the Medical Center.

The Medical Center finally responded on June 22, 2012. Paul Beshears, counsel for the Medical Center, sent a letter to Kristina Hillman, counsel for the Union, advising the Union that the Medical Center had not changed its position and would not arbitrate the grievance based on the express language in Article 22 of the Agreement.

On July 31, 2012, Bruce Harland, counsel for the Union, responded by letter to the Medical Center. The Union's July 31, 2012 letter informed the Medical Center that the Union was complying with the grievance process outlined in Article 40 of the Agreement and that the June 22 letter from the Medical Center was the "first official communication . . . after the Union demanded arbitration" in which the Medical Center informed the Union that it would not arbitrate. The Union's July 31 letter also identified a "pattern . . . whereby the employer claims that the Union's grievance lacks merit, and then refuses to arbitrate." The Union's July 31 letter urged the Medical Center to "let an arbitrator determine whether or not the employer violated the Agreement, just as the parties have bargained for."

## B. Proceedings before the District Court

On September 20, 2012, the Union filed its Petition to Compel Arbitration (Petition) in the Superior Court of California, County of Ventura.

On November 1, 2012, the Medical Center filed a notice to remove the Petition from the Superior Court of California to the Federal District Court for the Central District of California as a matter arising under federal law, Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

On November 27, 2012, the Union filed its Petition in federal court, alleging that the grievance was arbitrable. On February 15, 2013, the Medical Center filed a Motion for Summary Judgment arguing that (1) the Union's Petition was barred by the statute of limitations, and (2) the matter is not arbitrable under the terms of the Agreement.

On March 18, 2013, the Union's Petition and the Medical Center's Motion for Summary Judgment were heard before the district court. The district court granted the Medical Center's Motion for Summary Judgment against the Union and dismissed the Union's Petition.

Citing *Exber*, 994 F.2d at 676, the district court identified December 2, 2011, as the date upon which the Medical Center "unequivocally and expressly rejected the Union's request to arbitrate," thus triggering the accrual of time for the six-month statute of limitations. Therefore, the district court determined that the triggering date resulted in the Union's Petition being time barred when filed on September 20, 2012, more that three months after the statute of limitations closed on June 2, 2012. The district court did not address whether the matter is arbitrable under the terms of the Agreement. On April 1, 2013, the district court entered judgment against the Union. The Union timely appealed.

## II.

We review a district court's denial of a petition to compel arbitration de novo. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). We also review de novo a district court's determination of when a cause of action accrues and whether a claim is barred by the statute of limitations. *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1127 (9th Cir. 2006). We review with deference the factual findings of a district court. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 691 (9th Cir. 2005).

We also review a grant of summary judgment de novo. *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1137 (9th Cir. 2009). In reviewing a district court's grant of

summary judgment, we affirm only if the record, when "read in light most favorable to the non-moving party, reveals no genuine issue of material fact and establishes that the moving party is entitled to judgment as a matter of law." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 776 F.2d 812, 815 (9th Cir. 1985).

## III.

The parties in this case agree that the Petition is properly brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Neither party disputes that a claim for a petition to compel arbitration under Section 301 has a six-month statute of limitations. *Teamsters Union Local 315 v. Great W. Chem. Co.*, 781 F.2d 764, 769 (9th Cir. 1986). The dispute between the parties centers on when that six-month period commenced. The Union argues the six-month period commenced on June 22, 2012. The Medical Center argues that the period commenced on either October 24, December 2, or December 15, 2011.

"As a general rule in cases to which federal law applies, federal labor policy requires . . . use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). The intent of Congress in passing Section 301 was to encourage mutually agreed upon grievance procedures between parties to "promote a higher degree of responsibility upon the parties to such agreements . . . thereby promot[ing] industrial peace." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l, AFL-CIO*, 370 U.S. 254, 263 (1962) (quoting S. Rep. No. 105, 80th Cong., 1st Sess. 17). "That policy can be effectuated only if the means chosen by the parties for settlement of their differences under

a collective bargaining agreement is given full play."  *Id.* (citing *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 566 (1960)).  This goal is embodied in Article 40.2 of the Agreement which states that "[a]ll grievances must be presented at the proper steps."

We have held that the Section 301 statute of limitations can start to run before the completion of a collective bargaining agreement's grievance process.  *Exber*, 994 F.2d at 675–76.  The *Exber* court held that "for an employer to 'make it clear' that it refuses to arbitrate and, therefore, to start the statute of limitations running, an unequivocal, express rejection of the union's request for arbitration must be communicated to the union.  Constructive notice is not sufficient."  *Id.* at 676.

We therefore must determine—considering the grievance process that parties must to follow under the Agreement—when the Union requested arbitration, and when the Medical Center unequivocally and expressly rejected that request.  The Union generally followed the three-step process, initiating Step 1 by filing a written grievance on October 5, 2011.  The parties negotiated by email about whether the Union's complaint fell within the terms of the Agreement's grievance procedures.  The parties held a Step 1 meeting on October 25, 2011.  After that meeting did not resolve the grievance, the Union requested a Step 2 meeting in writing.  The Medical Center responded on December 2, 2011, stating that it was "declining to process this grievance" because it believed "this matter is neither grievable nor arbitrable."  The Union wrote back to the Medical Center on December 15, 2011, "[I]f you are refusing to schedule a step II meeting, we have no choice but to appeal and move this matter to the next step (arbitration)."  That same day, the Medical Center

refused the Union's request, and, under the terms of the Agreement, the refusal to schedule the meeting meant that the Medical Center denied the grievance at Step 2. Then, as promised, the Union sent a written request to arbitrate on January 17, 2012, which stated, "The [grievance] is hereby moved to Step 3 and referred to arbitration for final and binding resolution."

The district court ruled that the Medical Center's December 2, 2011 email was "an unequivocal, express rejection of the union's request for arbitration" under *Exber*, 994 F.2d at 676, starting the six-month statutory period. We recognize that the Union initially sought to bypass Steps 1 and 2 of the grievance process by requesting on October 24, 2011 that the Medical Center move the matter directly to Step 3 arbitration. After that point, however, the parties engaged in Step 1 and Step 2 of the grievance process, as noted above. We construe this record in favor of the Union, as we must on summary judgment, and conclude the Union made its Step 3 request for arbitration in its January 17, 2012 letter.

Because the Union did not request arbitration until January 17, 2012, the Medical Center's December 2, 2011 email could not have been an express rejection of the Union's Step 3 request for arbitration. The Medical Center responded to the Union's request in a June 22, 2012 letter, stating it "will not arbitrate this matter." Thus, contrary to the district court's ruling, the June 22, 2012 letter was the Medical Center's unequivocal, express rejection of the Union's Step 3 request for arbitration. As a result, the statute of limitations began to run that day, on June 22. *Exber*, 994 F.2d at 675-76. The Union filed its Petition in state court within six months of June 22, 2012, so the district court erred in concluding the Petition was untimely.

Notably, the Medical Center delayed for five months in responding to the Union's letter demanding arbitration, from January 17 to June 22, 2012.  During that period the Union awaited a response to its January 17 letter requesting arbitration of its grievance regarding the retaliatory elimination of four Stationary Engineer jobs and the creation of a lower paid Boiler Attendant position.  The contents of the Medical Center's eventual response letter hardly merited such a delay as the response letter merely reiterated, "The Hospital's position has not changed from what it communicated to the Union on November 9, 2011."  Rather than delaying five months, the Medical Center could have responded promptly to the Union's letter, likely eliminating the need for litigation regarding the application of the Section 301 statute of limitations.  *See Great W.*, 781 F.2d at 766 ("[I]t is important that [arbitration] be promptly invoked and promptly administered . . . [A]ll need to know where they stand.").

Reading the record in the light most favorable to the Union as we must, *Int'l Ass'n of Machinists*, 776 F.2d at 815, it is plausible that the Medical Center, forecasting a dispute over the statute of limitations for this grievance, made a conscious decision to wait six months from the December 15, 2011 email exchange with the Union before responding to the Union's January 17 letter.  Under this theory, waiting until June 22 to respond had the potential effect of rendering any effort by the Union to compel arbitration time-barred.

When passed, Section 301 carried with it "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts."  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985) (citing *Textile Workers v. Lincoln*

*Mills*, 353 U.S. 448, 456 (1957)). As the Supreme Court remarked in *Auto Workers v. Hoosier Cardinal Corp.*, a suit "caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement . . . closely resembles an action for breach of contract cognizable at common law." 383 U.S. 696, 705 n.7 (1966).

As such, and since the statute of limitations poses no bar to the Union's claims, we consider whether the parties to a collective bargaining agreement acted in accordance with the principles of good faith performance required by the common law of contracts. *See Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910 (9th Cir. 2001) (remarking that Commentary on the Second Restatement of Contracts "provide[s] that [g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . . [and] that [s]ubterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified") (internal quotation marks omitted).

Good faith performance principles must apply here, considering that Congress codified the duty of employers to act in "*good faith* with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or *any question arising thereunder*" in the National Labor Relations Act (NLRA). 29 U.S.C. § 158(d) (emphasis added). Indeed, our court established the six-month statute of limitations for Section 301 in part by looking to the duties and procedures of the NLRA. *See Great W.*, 781 F.2d at 768–69.

We consider the "federal policies at stake and the practicalities of litigation" in deciding this matter. *Id*. at 768

(quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171–72 (1983)).  As Justice Goldberg reminded us, "[I]n this Court's fashioning of a federal law of collective bargaining, it is of the utmost importance that the law reflect the realities of industrial life and the nature of the collective bargaining process."  *Humphrey v. Moore*, 375 U.S. 335, 358 (1964) (Goldberg, J., concurring in the result).

At summary judgment, the Medical Center's five-month delay in responding to the Union's January 17, 2012 letter must be considered a violation of good faith.  The Medical Center's five-month delay was a period of time nearly equal to the entire six-month statute of limitations, a period designed "to accommodate a balance of interests" in labor disputes, not simply as an artificial clock for an employer to run out while stonewalling a union's attempt to follow a grievance procedure.  *Great W.*, 781 F.2d at 769 (quoting *DelCostello*, 462 U.S. at 169).

In *Great Western* the Ninth Circuit also noted that "it is important that [arbitration] be promptly invoked and promptly administered—important to the named parties and especially important to the aggrieved employee union member, and to those in management who have had direct relationships with the grievant.  They all need to know where they stand."  *Id.* at 766.  Our court observed, "A long period of controversy and conflict can be a serious burden, both for the grievant and for the management, and can poison the relationship between the contracting parties that the contract was designed to establish and preserve."  *Id*.

In this case, the Union invoked arbitration within the timeline of the Agreement and faithfully followed the grievance procedure.  It was the delay of more than five

months by the Medical Center, a length of time nearly as long as the statute of limitations itself, that resulted in a contentious dispute over summary judgment. Rather than making a good faith attempt to address the merits of the dispute, the Medical Center "poison[ed] the relationship between the contracting parties." *Id*.

In deciding this matter we are required to read the record "in [the] light most favorable to the non-moving party." *Int'l Ass'n of Machinists*, 776 F.2d at 815. We are mindful that Article 40.2 of the Agreement states that "[a]ll grievances must be presented at the proper steps."[6]

We hold that it is a breach of the duty of good faith performance under Section 301 for an employer to fail to respond within a reasonable time to a union's communication which seeks to abide by a grievance process set forth in a collective bargaining agreement. Only an "unequivocal, express rejection of the union's request for arbitration" will start the six-month limitations period under Section 301. There is no such thing as constructive notice of an employer's refusal to arbitrate; if an employer offers varying responses to a request to arbitrate, its responses do not constitute an unequivocal, express rejection. *Exber*, 994 F.2d at 676. It was not reasonable for the Medical Center to wait in silence for more than five months following the Union's letter

---

[6] Indeed, failing to follow the steps of the Agreement's grievance procedure can result in the dismissal of a union's petition to compel arbitration. *See*, *e.g.*, *Beriault v. Local 40, Super Cargoes & Checkers of Int'l Longshoremen's & Warehousemen's Union*, 501 F.2d 258, 262–63 (9th Cir. 1974) (affirming the dismissal of a petition to compel arbitration because, "[a]s a general rule, employees must attempt to exhaust the grievance and arbitration procedures established by the bargaining agreement before seeking judicial enforcement of their rights").

demanding arbitration, and then claim in litigation that the Union missed the statute of limitations.  *See* Appendix A.

We reverse the grant of summary judgment and remand for further proceedings consistent with this opinion. We also vacate the award of costs for reconsideration in light of our reversal of summary judgment.  *See* Fed. R. Civ. Pro. 54(d)(1).

**REVERSED and REMANDED in part; and VACATED in part.**

# APPENDIX A





& U.S. MAIL

January 17, 2012

Jonathan Berke
Director of Human Resources
Los Robles Hospital
215 West Janss Road
Thousand Oaks, California 91360

RE:    Grievant:        **Class Action Grievance**
       Classification:  **Stationary Engineers**
       Issue:           **Violation of Duration Article**
                        **Job Description Article**
       Filed:           **October 5, 2011**

Dear Mr. Berke:

The above referenced matter is hereby moved to Step 3 and referred to arbitration for final and binding resolution. The case has been assigned to me:

> Edwin Valdez
> Union Representative
> SEIU United Healthcare Workers-West
> 5480 Ferguson Drive
> Los Angeles, California 90022
> Cell:    (323) 346-8115
> Fax:     (323) 721-3538
> E-Mail:  evaldez@seiu-uhw.org

Expect a request from our law firm for a panel of arbitrators from FMCS within seven (7) days.

Sincerely,

Edwin Valdez
Union Representative
SEIU United Healthcare Workers-West

Cc:    Alex Espinoza, Assistant Director Hospital Division
       Bruce Harland, Union Counsel
       Files

Dave Regan - President
Stan Lyles - Vice President

560 Thomas L. Berkley Way
Oakland, CA 94612
510-251-1250
FAX 510-763-2680

5480 Ferguson Drive
Los Angeles, CA 90022
323-734-8399
FAX 323-721-3538

www.SEIU-UHW.org

**EXHIBIT L**