**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

MAY 12 2022

**FOR THE NINTH CIRCUIT**

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-15735 |
| Plaintiff-Appellant, | D.C. No.<br>2:17-cv-02303-MMD-BNW |
| v. | |
| COUNTY OF CLARK; NEVADA LINKS, INC., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, Chief District Judge, Presiding

Argued and Submitted March 14, 2022
Las Vegas, Nevada

Before: KLEINFELD and BENNETT, Circuit Judges, and COGAN,** District
Judge.

The United States challenges the grant of summary judgment to defendants

County of Clark and Nevada Links. The district court held the United States's

breach of contract and fiduciary duty claims were barred by a six-year statute of

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Brian M. Cogan, United States District Judge for the
Eastern District of New York, sitting by designation.

limitations. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

We review the district court's grant of summary judgment to defendants de novo, viewing the evidence in the light most favorable to the plaintiff. *Luna v. Hansen & Adkins Auto Transp., Inc.*, 956 F.3d 1151, 1152 (9th Cir. 2020). We also review "de novo a district court's [summary judgment] determination of when a cause of action accrues and whether a claim is barred by the statute of limitations." *SEIU United Healthcare Workers-W. v. Los Robles Reg'l Med. Ctr.*, 812 F.3d 725, 729 (9th Cir. 2015).

In 1998, Congress passed the Southern Nevada Public Land Management Act of 1998, Pub. L. No. 105-263, 112 Stat. 2343 (1998) ("Act"). In a 1999 deed issued under the Act ("Deed"), the United States Department of the Interior's Bureau of Land Management ("BLM") conveyed 140 acres of land near the McCarran International Airport covered by the Act to the County. The Act allowed the County to lease the conveyed land, but only "for fair market value." 112 Stat. at 2347. The Act also required the County to pay BLM 85% of the money it generated from leasing the land. *Id.* The Deed adopted these terms by reference.

In 1999, the County leased 154 acres of land—about 91 acres of which were covered by the Act—to Nevada Links ("Lease"), because the County wanted "to

2

develop and construct a golf course and related facilities" on the property. Under the Lease, the County would receive 40% of Nevada Links's net revenue as rental payment. In 2004, the County and BLM signed a contract ("Memorandum of Agreement"), which restated the fair-market value rent requirement under the Act and explicitly permitted profit-sharing leases so long as the projected net present value of the participatory rent was at least as high as the projected net present value of the Lease at market rate. On September 6, 2011, the Board of County Commissioners approved an amendment to the Lease ("Fourth Amendment"), which required Nevada Links to pay the County a fixed rent of $100,000 per year as ground rent, with an annual adjustment.

The United States sued the defendants on September 1, 2017, arguing the ground rent provision fixed the rent below fair-market value and was thus a breach of the Memorandum of Agreement, the Deed, and the Act, as well as a breach of fiduciary duty. The district court granted summary judgment to the defendants based solely on the statute of limitations. The district court found the United States's alleged injury under the Fourth Amendment was the same injury as under the 1999 original Lease: "the underpayment of rent." The district court thus held that the United States's claims were barred by a six-year statute of limitations. *See* 28 U.S.C. § 2415(a) ("[E]very action for money damages brought by the United States . . . which is founded upon any contract express or implied in law or fact,

3

shall be barred unless the complaint is filed within six years after the right of action accrues . . . ."). The district court found the United States's right of action accrued when the BLM became aware that Nevada Links was paying the County $0 in rent under the participatory rent term of the original Lease—in August 2010, at the latest. Alternatively, the district court held the cause of action accrued for statute of limitations purposes when the BLM received a copy of the proposed Fourth Amendment on August 11, 2011.

We disagree with both of the district court's rulings and therefore reverse. We also reinstate the United States's declaratory judgment claim, which the district court dismissed without discussion.

First, the United States never argued or claimed that the original Lease's participatory rent term breached the contract or a fiduciary duty. To the contrary, the United States argued below and on appeal that the participatory rent term meets the fair-market value requirement of the Act because the projections and appraisals made in 1999 showed that the profits (and therefore the payments to the BLM) would exceed fair-market value rent over the life of the Lease. The County agrees that the Lease's "participatory rent provision complied" with the fair-market value requirement. Thus, the district court's first holding (which is necessarily based on a claim the United States never made—that the *participatory rent term* violated the 2004 Memorandum of Agreement) must be reversed. Since there was no arguable

4

breach until the Fourth Amendment was on the table in 2010, the breach claim couldn't have possibly accrued years earlier.[1]

As to the district court's "alternative" ruling, no cause of action could have accrued based on the BLM receiving notice of a proposed Fourth Amendment on August 11, 2011. Even putting aside that the BLM received notice of a *possible* amendment, not an actual amendment, the August 11 Fourth Amendment draft required the BLM's consent for the rent term to go into effect. Had that version been adopted, there could be no claim, because the rent provision wouldn't have changed without the BLM's consent.[2] Thus, no claim accrued on August 11, 2011.

In our view, the statute of limitations does not bar the United States's claims. General contract law and the applicable statute of limitations rely on a specific "time of the breach," *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002) (quoting 1 C. Corman, *Limitations of Actions* § 7.2.1, p. 482 (1991)), that created the United States's "right of action," 28 U.S.C. § 2415(a). The United States's position is that the Board of County Commissioners' approval of the Fourth Amendment on September 6, 2011 ("Approval Date") created the United States's

---

[1] We do not hold that the United States's description of its claim controls. Were the original Lease's rent terms and the Fourth Amendment's rent terms identical or very similar, we might well reject a "strategic" disclaimer of a claim by the United States. But here, participatory rent is much different from fixed rent.

[2] By contrast, the adopted Fourth Amendment rent term arguably did not require the BLM's consent, as discussed below.

right of action. The County argues that "[t]he Fourth Amendment did not injure the government" because the Fourth Amendment's rent provision never went into effect. Assuming the fixed rent term went into effect on the Approval Date, we hold the United States's right of action accrued on September 6, 2011. Thus, the lawsuit filed on September 1, 2017—less than six year later—was timely.

The County also raises two arguments that relate to interpreting the Fourth Amendment. These arguments were made to the district court, which did not discuss them when granting summary judgment. Because we "may affirm on any ground supported by the record, including grounds the district court did not reach," we address these arguments now. *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1130 (9th Cir. 2019).

First, the County characterizes both the fixed rent term, and the Fourth Amendment as a whole, as "inoperative."[3] Similarly, Nevada Links argues that "[t]he Fourth Amendment never actually became effective because the U.S. did not approve it, as it must do in order for the amendment to take effect." Second, the County argues that even if the fixed rent term came into effect on the Approval

---

[3] This is the term used by the County. But the County does not deny that *some* portions of the Fourth Amendment came into effect on the Approval Date, as discussed below. In context, the County asserts only that the fixed rent term never came into effect.

Date, it did not replace the participatory rent; the two rent terms were both in effect following the Approval Date.

"[T]he interpretation of private contracts is ordinarily a question of state law . . . ." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). "A federal court applies state law as it believes the highest court of the state would apply it." *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 692 (9th Cir. 1992). "A contract is ambiguous if its terms may reasonably be interpreted in more than one way," or if it is "obscure in meaning, through indefiniteness of expression, or having a double meaning." *Galardi v. Naples Polaris, LLC*, 301 P.3d 364, 366 (Nev. 2013) (cleaned up).

Under Nevada law—which controls the interpretation of the Fourth Amendment, a contract between Nevada Links and the County—summary judgment is appropriate only if the court can decide the contract's meaning without resort to any extrinsic evidence. *See Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994) ("If there is an ambiguity requiring extrinsic evidence to discern the parties' intent, summary judgment is improper.").[4] Because the Fourth Amendment is ambiguous as to both interpretations the County raises, neither this

---

[4] Nevada provides an exception for trade usage and custom, but the Nevada Supreme Court has stated that "[a]llowing extrinsic evidence of objective facts such as industry usage and custom does not open the door to a party's subjective understanding of a contract's terms, when that understanding contradicts the contract's express terms." *Galardi*, 301 P.3d at 368.

court nor the district court can decide these issues on summary judgment. Thus, we remand these two arguments for further proceedings.

First, if the new fixed rent term did not go into effect, as the County argues, there could not have been a breach, and the United States would lose. But the Fourth Amendment is ambiguous on the question. Thus, whether the fixed rent term went into effect is for the trier of fact.

Section 1.2 states that "[w]hile the County and [Nevada Links] agree that this Fourth Amendment shall be deemed binding upon the parties after the date that both the County and [Nevada Links] have executed this Fourth Amendment and the Approval Date has occurred," the parties agree that "except for the provisions and conditions" in a specified list of sections—in which Section 1.6, which contains the fixed rent term, is *not* included—"the remaining Sections of this Fourth Amendment shall not become operative unless and until the . . . conditions precedent are first satisfied." The date when the conditions are satisfied is defined as the "Effective Date." The conditions, in short, are as follows: Nevada Links must obtain approval from the lender, the County must obtain approval from the BLM, and Nevada Links must obtain a final non-conforming zone change that entitles it to develop commercial facilities beyond golf facilities. The latter two conditions have not yet been satisfied. The defendants argue that because Section

8

1.6 was not in the list, and because the conditions have not been satisfied, the fixed rent term is not operative. This is a reasonable interpretation of the contract.

On the other hand, the Fourth Amendment states in Section 1.6, without qualification, that "[c]ommencing on the Approval Date," Nevada Links agreed to pay $100,000 per year as ground rent. This is a clear statement at odds with the sections the County cites. And Section 1.6.2.1 states: "This rental shall begin on the Approval Date, with the first payment for the partial month of September, prorated . . . and due no later than September 30, 2011." This too is a clear statement that appears to contradict the sections the County cites. Moreover, as the County admitted at oral argument, it would have been legally impossible for the final non-conforming zone change (one of the conditions precedent) to have gone into effect by September 30, 2011.[5] Thus, under the County's supposed unambiguous interpretation, the contracting parties adopted a provision on rent proration that was necessarily a nullity. *See Mendenhall v. Tassinari*, 403 P.3d 365, 373 (Nev. 2017) ("A court should not interpret a contract so as to make meaningless its provisions, and every word must be given effect if at all possible." (cleaned up)).

Moreover, Section 1.6.2.1 states: "In the event that this Fourth Amendment shall terminate and be of no further force and effect on or before the Effective

---

[5] *See* Oral Argument at 20:20–22:00.

Date, then the rent shall revert to the rent set forth in the Lease . . . ." If the Fourth Amendment could have terminated and have had "no further force and effect" before the Effective Date, then it must have had some force and effect before the Effective Date. Similarly, if the fixed rent term could "revert to the rent set forth in the Lease," then it likely must have gone into effect on the Approval Date.

Because these two sections necessarily create an ambiguity, the County's argument cannot be resolved on summary judgment.[6] *Dickenson*, 877 P.2d at

---

[6] There is parol evidence supporting both positions. For example, the draft Fourth Amendment's rent term required BLM approval (as it went into effect on the Effective Date), while the *adopted* Fourth Amendment's rent provision states it went into effect on the Approval Date. The United States argues that this change was a "material differen[ce]." And the trier of fact could find that the parties intended, by this change, to delete the need for BLM approval. The County argues that the modification "simply provided that the provisional payments would begin on the Approval Date," but changed nothing as to "the legal question of whether or not the ground rent provision had become legally operative." But the trier of fact could see it differently.

Second, the parties' course of performance could support a finding that they believed the new fixed rent term went into effect. Nevada Links's annual rent payments changed from $0 on August 31, 2011, to $100,000 starting September 6, 2011. Nevada Links made these payments to the County even after the County stopped sending BLM its share of those payments under the Act when the United States filed this litigation.

Third, in a letter to BLM, a County manager stated that the County and Nevada Links "renegotiated the payment terms of the participatory rent due under the Lease Agreement to require ground rent of $100,000 per year." The County manager stated that "the obligation of Nevada Links, Inc. to pay ground rent[] became operative upon approval of the Fourth Amendment by the [Board]."

There is at least one piece of extrinsic evidence that weighs against finding the fixed rent term went into effect on the Approval Date. The United States

10

1061.  These differing reasonable interpretations create a "double meaning" in the Fourth Amendment that prevents us from resolving this issue on summary judgment.  *Galardi*, 301 P.3d at 366.   Neither interpretation is "inevitably compelled by the language within the four corners of the instruments." *Margrave v. Dermody Props., Inc.*, 878 P.2d 291, 293 (Nev. 1994) (per curiam).  We therefore remand this issue for trial.

Second, the County argues that the fixed rent term went into effect in tandem with the participatory rent term, not to replace it.  The County thus argues that if the participatory rent was not a breach of contract or fiduciary duty—as the United States concedes—then participatory rent *plus* fixed rent could not have possibly been a breach.  Because there are two plausible readings of the Fourth Amendment, this issue also cannot be resolved at summary judgment.

The County's best argument on the issue relies on Section 1.6.8, which provides that the fixed rent provisions in Section 1.6 "replace, as of the Effective Date, the [participatory rent] provisions . . . [at Section 1.7] of the Lease."  In short, the County argues that between the Approval Date and the Effective Date, Nevada Links owed *both* fixed rent and participatory rent; because the fixed rent provision

---

asserted at paragraph 36 of its complaint that the fixed rent provision took effect only after BLM approval.
　　Under Nevada law, this evidence, if admissible, is for the trier of fact. *Dickenson*, 877 P.2d at 1061.

wasn't "replaced" until the effective date, it must have stayed in effect before that date. In response, the United States points to Section 1.6.2.1, quoted above, and argues that if the rent "shall *revert* to the . . . rent set forth in the Lease," then "the Fourth Amendment's new rental provision had displaced the profit-sharing rent." Rent could only "revert" if it had changed from participatory to fixed in the first place.

Again, there are two reasonable interpretations, neither compelled by the language of the contract. We therefore also remand this issue for trial.

The grant of summary judgment is reversed, and the case is remanded for further proceedings not inconsistent with this decision.

**REVERSED AND REMANDED.**[7]

---

[7] The parties shall bear their own costs on appeal.